1 | Robert S. Arns, State Bar No. 65071
Jonathan E. Davis, State Bar No. 191346
2 | Kevin M. Osborne, State Bar No. 261367
Julie C. Erickson, State Bar No. 293111
3 | Shounak S. Dharap, State Bar No. 311557
**THE ARNS LAW FIRM**
4 | 515 Folsom Street, 3rd Floor
San Francisco, CA 94105
5 | Tel: (415) 495-7800
Fax: (415) 495-7888
6
Attorneys for Plaintiffs
7

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

CRAIG MASON, PATRICIA HEALEY, and GARY GOODRICH, Individually and on Behalf of All Other Similarly Situated Persons,

Plaintiffs,

vs.

ASHBRITT, INC.; TETRA TECH, INC.; and DOES 1 through 100, inclusive,

Defendants.

Case No.

**CLASS ACTION COMPLAINT FOR DAMAGES [F.R.C.P. 23]**



1    Plaintiffs CRAIG MASON, PATRICIA HEALEY, and GARY GOODRICH, on behalf of

2 themselves and all others similarly situated, (collectively "Plaintiffs") bring this action against

3 Defendants ASHBRITT, INC. ("AshBritt") and TETRA TECH, INC. ("Tetra Tech") (collectively

4 "Defendants"), and allege, upon information and belief, except as to their own actions, the

5 investigation of their counsel, and the facts that are a matter of public record, as follows:

6    1.    As alleged herein, Plaintiffs are property owners and residents of the areas of

7 Northern California affected by the wildfires of October 2017. Plaintiffs suffered harm to real

8 property and misappropriation of personal property by Defendants, AshBritt and Defendant Tetra

9 Tech, who were responsible for testing and removing debris and contaminated soil from areas

10 affected by the fires.

11    2.    During the course of debris removal, Defendants performed, oversaw, or directed the

12 removal of excessive amounts of soil, structures, vegetation, or other land or materials, all of which

13 were unaffected and uncontaminated by the wildfires. Defendants directed work that caused damage

14 to or destroyed sidewalks, driveways, wells, and septic tanks. Defendants falsely reported to the

15 government agencies involved in the cleanup and the owners of the affected properties that land had

16 been cleaned and tests showed soils were uncontaminated when, in fact, contaminated soil, debris,

17 and materials remained, requiring further testing and cleanup. Defendants did this as a part of a

18 conspiracy, for which the United States government paid between $200 and $300 per ton of debris

19 removed and paid an estimated five times more per property than any fie cleanup in state history.

20    3.    Defendants AshBritt and Tetra Tech directed workers under their control to commit

21 such fraud on the United States government for the purpose of increasing their respective profits.

22    4.    Plaintiffs seek actual or compensatory damages, restitution, equitable relief, costs

23 and expenses of litigation, including attorneys' fees, and all additional and further relief that may be

24 available and that the Court may deem appropriate and just under all of the circumstances,

25 individually and on behalf of a proposed class defined below ("the Class").

26    **JURISDICTION AND VENUE**

27    5.    This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §

28 1331 and 18 U.S.C. § 1964(c).

1

6.    This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' California UCL and common law claims because the claims originate from a common nucleus of operative facts.

7.    Venue is proper in this Court pursuant to 28 U.S.C. 1391(b)(2) because, inter alia, a substantial portion of the acts and omissions giving rise to Plaintiffs' claims occurred in this judicial district, and under 28 U.S.C. § 1391(c)(2), because Defendants are subject to personal jurisdiction in this state and in this judicial district, such that Defendants are deemed to reside in this state and in this judicial district.

## PARTIES

**Plaintiffs**

8.    Plaintiff Craig Mason is a resident of the State of California. During the class period, Mr. Mason owned real property in Sonoma County on which Defendants performed cleanup services relating to the Northern California Fires. During the cleanup, Defendants removed excessive amounts of soil, structures, vegetation, or other land or materials from Mr. Mason's property, resulting in damage to real property, loss of personal property, and annoyance and discomfort.

9.    Plaintiff Patricia Healey is a resident of the State of California. During the class period, Ms. Healey owned real property in Sonoma County on which Defendants performed cleanup services relating to the Northern California Fires. During the cleanup, Defendants removed excessive amounts of soil, structures, vegetation, or other land or materials from Ms. Healey's property, resulting in damage to real property, loss of personal property, and annoyance and discomfort.

10.   Plaintiff Gary Goodrich is a resident of the State of California. During the class period, Mr. Goodrich owned real property in Sonoma County on which Defendants performed cleanup services relating to the Northern California Fires. During the cleanup, Defendants removed excessive amounts of soil, structures, vegetation, or other land or materials from Mr. Goodrich's property, resulting in damage to real property, loss of personal property, and annoyance and discomfort.

CLASS ACTION COMPLAINT FOR DAMAGES

**Defendants**

11.     Defendant AshBritt is a Florida corporation with its principal place of business located at 565 E Hillsboro Blvd. in Deerfield Beach, Florida and maintains substantial ongoing business operations in California. AshBritt is in the business of debris removal and disaster-related general contracting. AshBritt contracted with the United States Army Corps of Engineers ("the Army Corps of Engineers") to enter onto private properties affected by the Northern California Wildfires to demolish structures and objects damaged by fire, excavate contaminated soil, clear land, and remove or haul debris.

12.     Defendant Tetra Tech is a California corporation with its principal place of business located at 3475 East Foothill Boulevard in Pasadena, California and maintains substantial ongoing business operations in California. Tetra Tech is in the business of consulting, engineering, program management, and construction management. Tetra Tech was contracted to monitor, supervise, inspect, and direct the work of AshBritt and its subcontractors working on the subject properties.

## CLASS ACTION ALLEGATIONS

13.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and the following Class:

> All owners of real property in Sonoma, Lake, Mendocino, and Napa Counties on whose land Defendants performed cleanup work in relation to 2017 Northern California wildfire damage from October 2017 to the present. Excluded from this Class are Defendants and the Judge to whom this case is assigned.

Plaintiffs reserve the right to amend this Class definition if discovery or further investigation demonstrates that the Class should be expanded or otherwise modified.

14.     **Ascertainability of the Class.** The specific members of the Class are identifiable through investigation, Defendants' records, and records in the possession of State of California and County of Sonoma government agencies.

15.     **Numerosity of the Class.** The members of the Class are so numerous that joinder of all members would be impracticable. The precise number of members of the Class and their addresses are presently unknown to Plaintiffs but is presumed to be in the thousands. The precise number of persons in the Class and their identities and addresses may be ascertained from



3

1 investigation, Defendants' records, and records in the possession of State of California and County

2 of Sonoma government agencies. If deemed necessary by the Court, members of the Class may be

3 notified of the pendency of this action by mail, supplemented by published notice.

4     16.    **Existence of Predominance of Common Questions of Fact and Law.** There are

5 questions of law and fact common to the members of the Class that predominate over any questions

6 affecting only individual members, including:

7     a.    Whether Defendants were united in an enterprise that conducted a pattern of

8     racketeering acts;

9     b.    Whether Defendants established policies and engaged in uniform acts that resulted

10     in over-excavation of Plaintiffs' soil, destruction of Plaintiffs' property, and failure

11     to remove contaminated material from Plaintiffs' land;

12     c.    Whether Defendants trespassed onto Plaintiffs' real property, thereby causing

13     damage to land;

14     d.    Whether Defendants interfered with the possessory rights of Plaintiffs' personal

15     property,

16     e.    Whether Defendants' conduct violated Business and Professions Code §§ 17200, *et*

17     *seq.*;

18     f.    Whether Defendants' conduct otherwise violated California law;

19     g.    Whether Defendants are jointly or severally liable or otherwise legally responsible

20     for violations alleged herein under an agency or other theory; and

21     h.    Whether, as a result of Defendants' misconduct, Plaintiffs are entitled to damages,

22     restitution, equitable relief or other damages and relief, and, if so, the amount and

23     nature of such relief.

24     17.    **Typicality.** The named Plaintiffs' claims are typical of the claims of the members of

25 the Class. The named Plaintiffs have no interests antagonistic to those of the Class and are not

26 subject to any unique defenses.

27

28

CLASS ACTION COMPLAINT FOR DAMAGES

18.     **Adequacy.** The named Plaintiffs will fairly and adequately protect the interests of all members of the Class and have retained attorneys experienced in class action and complex litigation.

19.     **Superiority.** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons:

a.      It is economically impractical for members of the Class to prosecute individual actions;

b.      The Class is readily definable;

c.      Prosecution as a class action will eliminate the possibility of repetitious litigation; and

d.      A class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions.

20.     Plaintiffs do not anticipate any difficulty in the management of this litigation.

## FACTUAL ALLEGATIONS

### 2017 North Bay Wildfire and Preparations for Debris Removal

21.     In October 2017, a series of wildfires ignited and spread across Northern California, causing extensive damage throughout Sonoma, Napa, Mendocino, Lake, and other Counties ("the 2017 North Bay Wildfires"). The fires claimed the lives of 43 individuals, injured others, burned over 245,000 acres, and destroyed over 14,700 homes.

22.     On October 10, 2017, the President of the United States declared the 2017 North Bay Wildfires a major disaster and ordered federal aid to supplement recovery efforts in areas affected by the fires. The Federal Emergency Management Agency ("FEMA") was responsible for coordinating these efforts.

23.     Under the auspices of FEMA, the Army Corps of Engineers oversaw and coordinated contractors' clean up and debris removal work as a part of the recovery efforts following the 2017 North Bay Wildfires ("the Cleanup Project").

1   24.   Around October 2017, the Army Corps of Engineers contracted with Defendant

2   AshBritt to manage the Cleanup Project. AshBritt, a Florida company, entered into California for

3   the purpose of managing the Cleanup Project.

4   25.   Generally, the terms of the Army Corps of Engineers contract with AshBritt required

5   AshBritt to perform initial site reconnaissance and individual site assessments; monitor air quality

6   and prevent storm water pollution; segregate ash, metals, and concrete for transport to appropriate

7   disposal or recycling facilities; finish surfaces and remove topsoil; remove trees; and test soil for

8   contamination. Specifically, the contract required AshBritt perform the following:

9   Obtain, analyze and evaluate background soil samples to establish cleanup goals for
     the project, including asbestos testing. Asbestos testing will not be required if the
10  Contractor is assuming that all ash is toxic and disposing of it at the proper landfill
     location. If this assumption is not made, tests will be required at a rate of one test per
11  5000 yd$^3$ of ash.

12

13  Collect, consolidate, and remove ash and debris for disposal. This material typically
     requires special handling and disposal as "designated" or "special" waste at a lined
14  landfill.

15

16  Remove three to six inches of soil for reuse or disposal pending waste
     characterization. If soil is clean, a landfill may accept it as daily cover.

17

18  - Upon removing all the debris and three to six inches of soil, sample and analyze the remaining
     soil surface for the same constituents identified as clean-up goals.

19

20  - If results are higher than the threshold for clean-up goals (per the DROP), the Contractor will
     remove another layer of soil (from 1/2, inch to 3 inches) for disposal and conduct re-sampling of
21  the soil. The removal and re-sampling shall be repeated until the remaining soil meets objectives.
     - If results are less than the threshold clean-up goals, observe and verify the site preparation for
22  final erosion control and certification.

23

24  26.   Also in October 2017, Tetra Tech was contracted to collect and test soil, among other

25  things, on all properties where AshBritt and its debris removal subcontractors performed work.

26

27  

28

6

27.     Over the course of the months following the beginning of the Cleanup Project, Defendants were awarded several additional contracts to continue performing work on the Cleanup Project. Each additional contract included the same terms and requirements described above.

**Excessive Excavation & Removal**

28.     As indicated above, the Army Corps of Engineers contract required the removal of three to six inches of contaminated soil from the surface of Plaintiffs' properties. Defendants were then required to sample and analyze the remaining soil surface for additional contamination. If the contamination levels were higher than the California Human Health Screening Levels set by the Office of Health Hazard Assessment,[1] Defendants were required to remove small layers of soil (one and one-half to three inches at a time) and re-sample until the remaining soil met the safety threshold.

29.     AshBritt and Tetra Tech instructed or knowingly permitted subcontractors to excavate more than six inches, and in many cases, several feet of soil in locations where no soil had been tested for contamination. Plaintiffs allege that Defendants routinely removed excessive amounts of soil, up to six feet in depth at a time, far more than was necessary to dispose of contaminants, without performing sampling to determine whether the soil was contaminated.

30.     On August 22, 2018, the Director of the California Governor's Office of Emergency Services ("Cal OES") sent a letter to the Army Corps of Engineers (referred to in the letter as "USACE"). The letter informed the Army Corps of Engineers that Cal OES discovered "unacceptable" work performed as a part of the cleanup effort, including over-excavation, destruction of private property, and false reports of uncontaminated soil.

> After extensive on-site inspections, the issues we have discovered thus far include, but are not limited to, obvious over-scraping of properties, severe damage to driveway and sidewalks, and damage to wells and septic tanks. Additionally, more than a dozen sites that were deemed cleared by USACE have recently been discovered to contain contaminated ash and fire debris.
>
> […]
>
> USACE's contractors caused substantial damage to many survivors' properties resulting in revictimization of the affected wildfire survivors. […] it is clear that USACE's lack of oversight allowed its contractors to take far more soil than was

---

[1] "Soil- and Soil-Gas Screening Numbers (California Human Health Screening Levels or CHHSLs)," available at https://oehha.ca.gov/chhsltable (last visited January 30, 2019).

1   necessary on hundreds of lots. Given these subcontractors were paid per ton of soil
2   removed, it is probable this over-excavation was an intentional effort to capitalize on
    this tragedy by defrauding the government.

3       31.     The Army Corps of Engineers compensated AshBritt between $200 and $300 per ton

4   for the removal of debris, including excavated soil and cut down trees, and transportation of the

5   debris to a disposal site. Because AshBritt's compensation for excavation was based on the weight

6   of the soil removed, it oversaw and directed the over-excavation of Plaintiffs' land, with no

7   consideration for contamination levels or the need to remove material and debris, in order to increase

8   the weight of loads and, consequently, its profits.

9       32.     Both AshBritt and Tetra Tech personnel were personally involved in overseeing

10  work performed on each property involved in the Cleanup Project. An AshBritt project manager and

11  a Tetra Tech monitor were present at each location on a daily basis. These personnel instructed

12  subcontractors to over-excavate properties where proper testing had not been conducted. AshBritt

13  and Tetra Tech directed or knowingly permitted subcontractors' over-excavation in furtherance of

14  the common purpose of increasing profits at the expense of the United States government and to the

15  detriment of Plaintiffs.

16      33.     AshBritt and Tetra Tech informed State and Federal agencies that properties had

17  been cleaned and soil samples showed soil was uncontaminated when either no testing for

18  contamination had occurred on the properties or results of testing for contamination were falsified.

19  AshBritt and Tetra Tech made false statements to these agencies regarding contamination sampling

20  in furtherance of the common purpose of increasing profits at the expense of the United States

21  government and to the detriment of Plaintiffs.

22      34.     The Army Corps of Engineers contract allowed the removal of trees on private

23  property only when the trees prohibited the debris removal crews from performing their work or if

24  the trees posed a threat to the debris removal crews. Plaintiffs allege that Defendants routinely

25  removed trees that did not fit the criteria for removal in furtherance of the common purpose of

26  increasing profits at the expense of the United States government and to the detriment of Plaintiffs.

27      35.     As a result, Plaintiffs were deprived of the uncontaminated soil on their land and

28  incurred and will continue to incur significant costs to backfill trenches left by Defendants'



8

1  excessive excavation. Similarly, Plaintiffs were deprived of trees and vegetation on their property

2  and incurred and will continue to incur significant loss associated with the unnecessary removal of

3  trees from their properties. In many instances, Plaintiffs were told their properties had been found

4  cleaned and no contaminated soil remained when, in fact, contaminated soil remained on their

5  properties. In some cases, new soil has been backfilled on top of contaminated soil and property

6  owners must re-excavate their land to remove these contaminants.

7  **The Cleanup Enterprise**

8  36.   Over the past four years, Defendants AshBritt and Tetra Tech have worked closely

9  on debris cleanup sites after natural disasters around the country.

10  37.   On information and belief, this enterprise has been ongoing since at least 2015.

11  • In 2015, AshBritt contracted with Tetra Tech to perform monitoring and oversee

12  debris cleanup in Texas after a period of severe storms, tornadoes, and flooding.

13  • In 2015, the State of Connecticut designated AshBritt and Tetra Tech as the sole

14  contractors for disaster debris management and monitoring of debris management,

15  respectively.

16  • In 2016, AshBritt contracted with Tetra Tech to perform monitoring and oversee

17  debris cleanup in Texas after severe storms.

18  • In 2017, AshBritt contracted with Tetra Tech to perform monitoring and oversee

19  debris cleanup in Florida after devastation from Hurricane Irma.

20  • In 2017, AshBritt and Tetra Tech jointly worked on debris cleanup, as described

21  herein, in California after the 2017 North Bay Wildfires.

22  • In 2018, AshBritt contracted with Tetra Tech to perform monitoring and oversee

23  debris cleanup in Illinois after a period of severe tornadoes.

24  38.   In each instance, AshBritt engaged subcontractors for debris removal and oversaw

25  and directed their work and Tetra Tech monitored the debris removal.

26  39.   As detailed below, pursuant to 18 U.S.C. §1961(4), Ashbritt and Tetra Tech formed

27  an association in fact enterprise.  Each entity bid on government contracts for debris removal and

28  worked together to increase profits through false and fraudulent statements. The fundamental goal



9

of the enterprise was to maximize the profits of AshBritt and Tetra Tech by over-excavating on subject properties and unnecessarily removing non-debris material without testing for contamination. To achieve this goal, Defendants' submitted false attestations and statements to the Army Corps of Engineers certifying that they had removed necessary amounts of debris and soil from subject properties only after proper contamination testing.

40. AshBritt also instructed or knowingly permitted subcontractors to remove trees that did not prevent debris removal crews from performing their work and did not pose a threat to debris removal crew safety.

41. Ashbritt and Tetra Tech knew that the Army Corps of Engineers was compensating them for excavation based on debris weight, knew that they were only permitted to remove up to six inches of soil without testing for contamination, and knew that they were permitted to remove trees only when they prevented work from completion or posed a threat to the safety of debris removal crews.

42. Defendants communicated with each other via daily mail and e-mail correspondence in furtherance of their scheme to increase profits by over-excavating soil, needlessly removing debris, overseeing the destruction of Plaintiffs' property, and falsely claiming test results from contaminated properties showed the properties were clean.

**Fraud on the United States Government**

43. Defendants knowingly submitted false and fraudulent reports to the United States government for the purpose of increasing their profits.

44. Between October 2017 and the present, Defendants generated, collected, maintained, and submitted to government agencies reports that included numerous false representations. Such reports included daily work logs, monitor logs, job tickets, testing results and other records indicating that either crews had removed appropriate levels of soil and debris based on testing or that proper testing for contamination was completed and showed the soil was uncontaminated when it was not.

1     45.    On information and belief, these reports were sent on a daily basis, beginning in

2 October 2017, for the duration of the 2017 North Bay Wildfires project.[2]

3     46.    Additionally, Defendants have represented to the United States government that,

4 only contaminated soil and debris had been removed from each property. In reality, a substantial

5 portion of the soil and debris that Defendants removed was composed of untested or uncontaminated

6 soil and trees that did not meet the criteria for disposal.

7     47.    Defendants' false and fraudulent representations were submitted to the United States

8 government via mail, e-mail, and the online load ticket system.

9     **Harm to Plaintiffs**

10     48.    As a direct result of Defendants' excessive excavation, Plaintiffs and Class Members

11 incurred significant costs to backfill their land. They have incurred and will continue to incur costs

12 relating to backfilling land, repairing damaged sidewalks, repairing damaged driveways, repairing

13 damaged water lines, repairing damaged septic tanks, retesting soil for contamination, removing

14 contaminated soil, and in some cases re-excavating land to remove contaminated soil that remains

15 underneath backfill.

16     49.    Plaintiffs will spend thousands of dollars for further debris removal and backfill

17 services performed by private contractors where their properties were over-excavated. The cost to

18 date of backfilling over-excavated land and removing additional debris is approximately $8,500 per

19 property. This does not include costs Plaintiffs have incurred in relation to inspecting or repairing

20 septic tanks, replacing damaged or destroyed sidewalks or driveways, or testing soil for

21 contamination and remediation.

22 //

23 //

24 //

25 //

26 //

27 _____

[2] Plaintiffs anticipate the discovery of additional details regarding the precise dates and contents of

28 the reports.

**FEDERAL LAW CLAIMS**

**FIRST CAUSE OF ACTION**

**RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO)**
**Conducting the Affairs of the Enterprise Through a Pattern of Racketeering Activity**
**(Violation of 18 USC § 1962(c))**

50.     Plaintiffs reallege and incorporate by reference the allegations above as if fully set forth herein.

51.     From 2015 up to and including the date of the filing of this complaint, AshBritt and Tetra tech did unlawfully, knowingly, and intentionally conduct and participate, directly and indirectly, in the conduct, management, and operation of the affairs of the aforementioned Enterprise, which was engaged in, and the activities of which affected, interstate commerce, through a pattern of racketeering activity consisting of numerous acts of racketeering indictable under 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud).

**Existence and Conduct of the Enterprise**

52.     From 2015 up to and including the date of filing this complaint, Defendants collectively have constituted an "enterprise," as that term is defined in 18 U.S.C. § 1961, that is, a group of entities and individuals associated in fact, which was engaged in, and the activities of which affected interstate commerce.

53.     The Enterprise has functioned as a continuing unit for at least three years to achieve shared goals through unlawful means including submitting false and fraudulent reports and attestations to the United States government. These false reports represented that Defendants had properly tested soil on subject properties for contamination and removed only the amount of soil and debris necessary to remove contaminated debris from those properties. In reality, Defendants did not conduct the necessary soil contamination testing and routinely removed far more soil and materials from the subject properties than was permitted under the contract between AshBritt and the Army Corps of Engineers.

54.     The formation, existence, and actions of the Enterprise were essential to the success of Defendants' conspiracy to defraud the United States Government.



12

55.     The Enterprise is an ongoing organization whose constituent elements function as a continuing unit in maximizing the profits of its constituent members in disaster cleanup projects by jointly engaging in debris removal and monitoring work through which Defendants excavate far more debris than is permitted without the appropriate environmental testing. The Enterprise actively continues to disguise the nature of Defendants' wrongdoing and conceal Defendants' participation in the conduct of the Enterprise in order to minimize their exposure to criminal and civil penalties and damages.

56.     On information and belief, by frequent and continuous communications among and coordinated activities of Defendants and their agents that continue to the present day, Defendants and others continue to constitute an association-in-fact enterprise as defined in 8 U.S.C. § 1961.

**Pattern of Racketeering Activity**

57.     From 2015 and continuing until the time of filing of this complaint, Defendants intentionally devised and intended to devise a scheme and artifice to defraud and obtain money from the United States Government by means of materially false and fraudulent statements, knowing that the statements were false when made.

- In 2015, AshBritt contracted with Tetra Tech to perform monitoring and oversee debris cleanup in Texas after a period of severe storms, tornadoes, and flooding.
- In 2015, the State of Connecticut designated AshBritt and Tetra Tech as the sole contractors for disaster debris management and monitoring of debris management, respectively.
- In 2016, AshBritt contracted with Tetra Tech to perform monitoring and oversee debris cleanup in Texas after severe storms.
- In 2017, AshBritt contracted with Tetra Tech to perform monitoring and oversee debris cleanup in Florida after devastation from Hurricane Irma.
- In 2017, AshBritt and Tetra Tech jointly worked on debris cleanup, as described herein, in California after the 2017 North Bay Wildfires.
- In 2018, AshBritt contracted with Tetra Tech to perform monitoring and oversee debris cleanup in Illinois after a period of severe tornadoes.

13

58.     It was part of said scheme and artifice that Defendants would and did fail to conduct soil contamination testing pursuant to their contractual obligations for properties on which they performed work during the 2017 North Bay Wildfire project.

59.     It was further part of said scheme and artifice that Defendants would and did routinely excavate and remove large amounts of uncontaminated or untested soil and debris from subject properties on which they performed work during the 2017 North Bay Wildfire project.

60.     It was further part of said scheme and artifice that Defendants would and did submit false and fraudulent statements to the United States Government that misrepresented Defendants' compliance with their contractual obligations in relation to the 2017 North Bay Wildfire project. Specifically, Defendants represented to the government that they had removed far more contaminated soil from subject properties than they actually had, and as a result, Defendants received more money from the government.

61.     For the purpose of executing and attempting to execute the scheme and artifice described herein, and in violation of in violation of 18 U.S.C. § 1341, Defendants knowingly placed and caused to be placed in a post office or authorized depository for mail to be sent and delivered by the United States Postal Service; took and received; and knowingly caused to be delivered by mail matters and things, that included, but are not limited to:

- Reports and attestations from subcontractors to AshBritt falsely overstating the weight of contaminated soil removed from subject properties;

- Reports and attestations from Tetra Tech to AshBritt falsely confirming that AshBritt subcontractors had removed only contaminated soil from subject properties;

- Reports from AshBritt to the Army Corps of Engineers and FEMA falsely overstating the weight of contaminated soil removed from subject properties and fraudulently representing that Defendants had removed only contaminated soil from subject properties.

- Reports and attestations from AshBritt and Tetra Tech falsely claiming that soil samples demonstrated soil was clean and free of contamination when the soil at the subject properties remained contaminated; and



14

1      • Documents and communications between Defendants discussing the role each

2          Defendant would play in the Cleanup Enterprise's scheme to defraud the United States

3          government.

4      62.    For the purposes of executing and attempting to execute that scheme and artifice,

5  Defendants would and did knowingly transmit and cause to be transmitted in interstate commerce

6  by means of wire, radio, and television communication writings, signs, signals, pictures and sounds

7  (collectively "transmissions") in violation of 18 U.S.C. § 1343, including, but not limited to, the

8  transmissions set forth above. These communications were transmitted, on a daily basis, to a number

9  of servers that were the servers of both the United States government and Defendants located outside

10 of California, including, but not limited to, the District of Columbia, Oregon, Virginia, and

11 Washington.

12     63.    As a direct and proximate cause of Defendants' scheme, Plaintiffs suffered actual,

13 measurable, concrete damages. Defendants' acts in furtherance of the scheme described herein left

14 Plaintiff's land over-excavated, damaged, and contaminated. Plaintiffs were required to spend

15 thousands of dollars hiring contractors to backfill soil. Vegetation on Plaintiffs' property was

16 needlessly cleared from Plaintiffs' land. Objects on Plaintiffs' property were needlessly damaged or

17 destroyed, including sidewalks, driveways, septic tanks, and wells. And in some cases Plaintiffs'

18 property was declared clean and free of debris when in fact contaminated soil and debris remained

19 on the soil surface or buried under backfill.

20                        **SECOND CAUSE OF ACTION**

21 **RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO)**
   **Conspiracy to Conduct the Affairs of the Enterprise Through a Pattern of Racketeering**
22                                **Activity**
                        **(Violation of 18 USC §§ 1962(d))**

23     64.    Plaintiffs reallege and incorporate by reference the allegations above as if fully set

24 forth herein.

25     65.    In carrying out the above described pattern of racketeering, AshBritt conspired with

26 Tetra Tech, who agreed with the objectives of the scheme and agreed to assist in carrying them out.

27

28

66.     From 2015 up to and including the date of the filing of this complaint, Defendants did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree together to conduct and participate, directly and indirectly, in the conduct of the affairs of the aforementioned Enterprise, which was engaged in, and the activities of which affected, interstate commerce, through a pattern of racketeering activity consisting of numerous acts of racketeering indictable under U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud).

67.     Therefore, AshBritt and Tetra Tech conspired to violate 18 U.S.C. §1962(c) by agreeing to the commission of a pattern of racketeering activity through the association-in-fact enterprise, in violation of 18 U.S.C. §1962(d).

68.     Ash is jointly and severally liable for all damages to Plaintiffs, which, again, were directly and proximately caused by Defendants' scheme. Plaintiffs, as a consequence, suffered actual, measurable, concrete damages. Defendants' acts in furtherance of the scheme described herein left Plaintiff's land over-excavated, damaged, and in some cases contaminated. Plaintiffs were required to spend thousands of dollars hiring contractors to backfill soil. Vegetation on Plaintiffs' property was needlessly cleared from Plaintiffs' land. Objects on Plaintiffs' property was needlessly damaged or destroyed, including sidewalks, driveways, septic tanks, and wells. And in some cases Plaintiffs' property was declared clean and free of debris when in fact contaminated soil and debris remained buried under backfill.

**Existence and Conduct of the Enterprise**

69.     Each Defendants agreed that at least two acts of racketeering activity would be committed by a member of the conspiracy in furtherance of the conduct of the Enterprise. It was part of the conspiracy that Defendants would commit numerous acts of racketeering activity in the conduct of the affairs of the Enterprise, including, but not limited to, acts of racketeering set forth above.

**CALIFORNIA STATE LAW CLAIMS**

70.     With regard to the following claims for violations of California State law, the true names and capacities of DOES 1 through 100, inclusive, are unknown to Plaintiffs who sue such Defendants by use of such fictitious names. Plaintiffs will amend this complaint to add the true

16

1   names when they are ascertained. Plaintiffs are informed and believe and thereon allege that each

2   of the fictitiously named Defendants is legally responsible for the occurrences herein alleged, and

3   that Plaintiffs' damages as herein alleged were proximately caused by their conduct.

4     71. With regard to the following claims for violations of California State law, and on

5   information and belief, at all times herein mentioned, each Defendant was the agent, partner, joint

6   venturer, representative, or employee of the remaining Defendants, and was acting within the course

7   and scope of such agency, partnership, joint venture, or employment. Furthermore, in engaging in

8   the conduct described below, the Defendants were all acting with the express or implied knowledge,

9   consent, authorization, approval, or ratification of their co-Defendants.

10  **THIRD CAUSE OF ACTION**

11  **UNLAWFUL, FRADULENT BUSINESS PRACTICES**<br>**(Bus. & Prof. Code §§ 17200, *et seq.*)**

12    72. Plaintiffs reallege and incorporate the above allegations by reference as if set forth

13  fully herein.

14    73. Business & Professions Code §§ 17200 *et seq.* prohibits acts of "unfair competition,"

15  which is defined by Business & Professions Code § 17200 as including "any unlawful, unfair or

16  fraudulent business act or practice." Defendants' conduct, as described above, constitutes unlawful,

17  unfair, or fraudulent business acts and practices.

18    74. Defendants have violated and continue to violate Business & Professions Code §

19  17200's prohibition against engaging in "unlawful" business acts or practices by, *inter alia*:

20    a. Violating 18 U.S.C. § 1962, as set forth above;

21    b. Violating 18 U.S.C. §§ 1341, 1343, and 1952, as set forth above;

22    c. Committing trespass, as set forth below;

23    d. Committing conversion, as set for the below; and

24    e. Committing trespass to chattels, as set for the below.

25    75. Defendants' conduct does not benefit competition. Indeed, the injury to Plaintiffs as

26  a result of Defendants' conduct is substantial and far greater than any alleged countervailing benefit.

27    76. Plaintiffs could not have reasonably avoided the injury each of them suffered.

28



17

77.     The gravity of the consequences of Defendants' conduct as described above outweighs any justification, motive or reason therefore, is immoral, unethical, oppressive, unscrupulous, and is contrary to the public welfare since it transgresses civil statutes of the State of California designed to protect workers from exploitation.

78.     At all relevant times, Defendants exceeded their right of entry onto Plaintiffs' properties.

79.     Plaintiffs have suffered injury in fact and lost money or property as a result of Defendants' unlawful business acts and practices through the wrongful taking of excessive soil from Plaintiffs' properties.

80.     By and through its unlawful business practices and acts described herein, Defendants have obtained valuable property from Plaintiffs and have deprived Plaintiffs of valuable property, all to their detriment.

81.     As a result of Defendants' violations of the Business and Professions Code § 17200, Plaintiffs seek an order of this Court enjoining Defendants' continued violations. Plaintiffs also seek an order for restitution, disgorgement, and all other relief allowed under the UCL, including interest and attorneys' fees pursuant to, *inter alia*, Cal. Code of Civ. Proc. § 1021.5.

**FOURTH CAUSE OF ACTION**

**TRESPASS**

82.     Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

83.     Plaintiffs owned the subject properties.

84.     Plaintiffs permitted Defendants to enter onto the subject properties for the purpose of removing debris, ash, and contaminated soil as outlined by Defendants' contract with the Army Corps of Engineers. Defendants were not permitted to excavate uncontaminated or untested soil deeper than six inches or trees that posed no obstacle to access or hazard to worker safety.

85.     Defendants entered onto Plaintiffs' property and intentionally or negligently removed uncontaminated or untested soil deeper than six inches or trees that posed no obstacle to access or hazard to worker safety.



18

86.    Plaintiffs did not give Defendants permission to enter onto their property to remove uncontaminated or untested soil or trees that posed no obstacle to access or hazard to worker safety and Defendants exceeded their permission to enter the property.

87.    As a direct, proximate, and foreseeable result of Defendants' unauthorized excavation of uncontaminated or untested soil or trees that posed no obstacle to access or hazard to worker safety, Plaintiffs suffered injury to their land and peaceful enjoyment of their property, including the cost to backfill the removed soil.

88.    By the conduct described herein, Defendants have infringed upon Plaintiffs' property rights and caused injury to real property, annoyance, and discomfort. Plaintiffs seek an award of restitution, disgorgement, injunctive relief, and all other relief allowed under California law.

**FIFTH CAUSE OF ACTION**

**CONVERSION**

89.    Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

90.    Plaintiffs owned the soil and trees upon their real property. Once said soil or trees were excavated or severed from the ground, they were transformed into personal property.

91.    Defendants substantially interfered with Plaintiffs' soil or trees by knowingly or intentionally taking possession of them and removing them from Plaintiffs' land.

92.    Plaintiffs permitted Defendants to remove contaminated soil and trees as outlined by Defendants' contract with the Army Corps of Engineers. Defendants were not permitted to excavate uncontaminated or untested soil deeper than six inches or trees that posed no obstacle to access or hazard to worker safety.

93.    Defendants knowingly or intentionally removed uncontaminated or untested soil deeper than six inches or trees that posed no obstacle to access or hazard to worker safety.

94.    Plaintiffs did not give Defendants permission to remove uncontaminated or untested soil or trees that posed no obstacle to access or hazard to worker safety.

95.    As a result of Defendants' conduct, Plaintiff suffered a wrongful loss of soil or trees from their properties.



CLASS ACTION COMPLAINT FOR DAMAGES

96.     Defendants' conduct was a substantial factor in causing Plaintiffs' harm.

97.     By the conduct described herein, Defendants have interfered with Plaintiffs' possessory rights wrongfully taken Plaintiffs' personal property. Plaintiffs seek an award of restitution, disgorgement, injunctive relief, and all other relief allowed under California law.

**SIXTH CAUSE OF ACTION**
**TRESPASS TO CHATTELS**

98.     Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

99.     Plaintiffs owned the soil and trees upon their real property. Once said soil and trees were excavated or severed from the ground, they were transformed into personal property.

100.    Defendants intentionally interfered with Plaintiffs' possession of soil and trees by knowingly or intentionally taking possession of them and removing them from Plaintiffs' land.

101.    Plaintiffs permitted Defendants to remove contaminated soil and trees as outlined by Defendants' contract with the Army Corps of Engineers. Defendants were not permitted to excavate uncontaminated or untested soil deeper than six inches or trees that posed no obstacle to access or hazard to worker safety.

102.    Defendants knowingly or intentionally removed uncontaminated or untested soil deeper than six inches or trees that posed no obstacle to access or hazard to worker safety.

103.    Plaintiff did not give Defendants permission to remove uncontaminated or untested soil or trees that posed no obstacle to access or hazard to worker safety.

104.    As a result of Defendants' conduct, Plaintiff suffered a wrongful loss of soil or trees from their properties.

105.    Defendants' conduct was a substantial factor in causing Plaintiffs' harm.

106.    By the conduct described herein, Defendants have interfered with Plaintiffs' possessory rights wrongfully taken Plaintiffs' personal property. Plaintiffs seek an award of restitution, disgorgement, injunctive relief, and all other relief allowed under California law.



CLASS ACTION COMPLAINT FOR DAMAGES

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.   An order certifying this case as a class action and appointing Plaintiff Craig Mason as class representatives and their counsel the Arns Law Firm to represent the Class;

B.   For actual and compensatory damages according to proof pursuant to the Racketeering Influenced and Corrupt Organizations Act, Civil Code, common law, and all other applicable laws and regulations;

C.   For liquidated damages to the extent permitted by law;

D.   For an order enjoining Defendants from continuing to engage in the conduct described herein;

E.   For restitution and disgorgement to the extent permitted by applicable law;

F.   For civil and statutory penalties available under applicable law;

G.   For pre-judgment and post-judgment interest;

H.   For an award of attorneys' fees, costs and expenses as authorized by applicable law; and

I.   For such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all causes of action so triable.

_____
ROBERT S. ARNS
JONATHAN E. DAVIS
KEVIN S. OSBORNE
JULIE C. ERICKSON
SHOUNAK S. DHARAP
**THE ARNS LAW FIRM**



CLASS ACTION COMPLAINT FOR DAMAGES