1
2
3
4  UNITED STATES DISTRICT COURT
5  NORTHERN DISTRICT OF CALIFORNIA
6
7  CRAIG MASON,                          Case No. 19-cv-01062-DMR
8          Plaintiff,
9      v.
10 ASHBRITT, INC., et al.,
11         Defendants.
12
13 CHARLOTTE HORNE, et al.,               Case No. 18-cv-07181-DMR
14         Plaintiffs,
15     v.
16 TETRA TECH, INC., et al.,
17         Defendants.

18 **ORDER ON DEFENDANTS' MOTIONS TO STRIKE CLASS ALLEGATIONS**

19      These related putative class actions arise from property damage caused by the Northern

20 California wildfires of October 2017 and subsequent remediation efforts. Plaintiff Craig Mason is

21 the sole named representative of *Mason v. Ashbritt, Inc.*, et al., Case No. 19-cv-01062-DMR.

22 *Mason*, Docket No. 35 ("*Mason* SAC"). AshBritt, Inc. ("AshBritt") and Tetra Tech, Inc. ("Tetra

23 Tech") are defendants in that case. Plaintiffs Charlotte Horne, Wilbert Horne, James Gehrke, Ruth

24 Gehrke, Barbara Zoellner, Charles T. Walter, Jr., Patricia Healey, and Gary Goodrich are the named

25 representatives in *Horne v. Tetra Tech, Inc.*, et al, Case No. 18-cv-7181. *Horne*, Docket No. 49

26 ("*Horne* SAC"). Tetra Tech and Environmental Chemical Corporation, dba ECC Remediation

27 Services ("ECC") are defendants in *Horne*. Unless it is necessary to distinguish between the cases,

28 all parties in both cases collectively will be referred to as Plaintiffs and Defendants.

Defendants move to strike Plaintiffs' class allegations pursuant to Rule 12(f). *Mason*, Docket Nos. 39 ("Tetra Mot."); 43 ("AshBritt Mot."); *Horne*, Docket Nos. 50 ("ECC Mot."), 52.[1] Plaintiffs timely opposed. *Mason*, Docket Nos. 49 ("Opp. to AshBritt"), 50 ("Opp. to Tetra"); *Horne*, Docket Nos. 54 ("Opp. to ECC"), 55.[2] Having considered the parties' arguments, the court grants the motions in part and denies them in part.

## I.     FACTUAL BACKGROUND

The factual backgrounds of these related cases are nearly identical, except for small differences as noted.[3] Mason, a California resident, owned real property in Sonoma County during the class period, which is defined as October 2017 to the present. *Mason* SAC ¶¶ 8, 11. The *Horne* Plaintiffs are all California residents who owned real property in Napa or Sonoma County during that same time period. *Horne* SAC ¶¶ 9-16. In October 2017, a series of wildfires caused extensive damage throughout the Northern California counties of Sonoma, Napa, Mendocino, and Lake, among others. *Mason* SAC ¶ 19. The fires burned over 245,000 acres of land and destroyed over 14,700 homes. *Id.*

On October 10, 2017, President Trump ordered federal aid to assist the recovery efforts in areas affected by the fires. *Mason* SAC ¶ 20. The Federal Emergency Management Agency ("FEMA") coordinated those efforts. *Id.* The Army Corps of Engineers ("ACE"), working under FEMA, "oversaw and coordinated contractors' clean up and debris removal work as part of the recovery efforts" (the "Project"). *Id.* ¶ 21. ACE contracted with AshBritt and ECC to manage the Project. *Id.* ¶ 22; *Horne* SAC ¶¶ 17-18. Those entities in turn contracted with Tetra Tech to "monitor, supervise, inspect, and direct the work" of the primary contractors and their subcontractors on the subject properties. *Mason* SAC ¶ 10; *Horne* SAC ¶ 20.

---

[1] It is unnecessary to distinguish between Tetra Tech's motions for the purposes of this order because they are nearly identical. The primary difference in the briefs is the discussion of RICO claims in *Mason*, which are not at issue in this order. Therefore, all page citations in this order are to the motion that Tetra Tech filed in *Mason*.

[2] For the same reason, it is unnecessary to distinguish between Plaintiffs' oppositions to Tetra Tech.

[3] For expediency, the court cites only to the allegations in the *Mason* complaint except where it is necessary to distinguish between the cases.

## A.     Scope of the Project

Under AshBritt's contract with ACE, AshBritt was required to perform various services, including:

> Obtain, analyze and evaluate background soil samples to establish cleanup goals for the project, including asbestos testing. Asbestos testing will not be required if the Contractor is assuming that all ash is toxic and disposing of it at the proper landfill location. If this assumption is not made, tests will be required at a rate of one test per 5000 [cubic yards] of ash.
>
> Collect, consolidate, and remove ash and debris for disposal. This material typically requires special handling and disposal as "designated" or "special" waste at a lined landfill.
>
> Remove three to six inches of soil for reuse or disposal pending waste characterization. If soil is clean, a landfill may accept it as daily cover.
>
> Upon removing all the debris and three to six inches of soil, sample and analyze the remaining soil surface for the same constituents identified as clean-up goals.
>
> If results are higher than the threshold for clean-up goals . . . , the Contractor will remove another layer of soil (from 1/2[] inch to 3 inches) for disposal and conduct re-sampling of the soil. The removal and re-sampling shall be repeated until the remaining soil meets objectives.
>
> If results are less than the threshold clean-up goals, observe and verify the site preparation for final erosion control and certification.

*Mason* SAC ¶ 23. In October 2017, AshBritt subcontracted with Tetra Tech to collect and test soil, among other services, on all properties where AshBritt and its debris removal subcontractors performed work. *Id.* ¶ 24. As the Project progressed, AshBritt and Tetra Tech were awarded additional contracts to continue performing work, and each additional contract "included the same terms and requirements" as those listed above. *Id.* ¶ 25.

With respect to the allegations in *Horne*, ECC also had a contract with ACE. The *Horne* complaint does not contain excerpts from specific contract provisions. Instead, it states that under the contract, ECC was "responsible for performing initial site reconnaissance and individual site assessments; monitoring air quality and preventing storm water pollutions; segregating ash, metals, and concrete for transport to appropriate disposal or recycling facilities; finishing surfaces and removing topsoil; removing trees; and testing soil for contamination." *Horne* SAC ¶ 36.

3

### B. Allegations of Excessive Excavation and Removal

Plaintiffs claim that the ACE contracts required Defendants to perform incremental soil removal by removing small layers of soil and re-sampling the soil for additional contamination before removing more. *Mason* SAC ¶ 26. They allege that Defendants "routinely removed excessive amounts of soil, up to six feet in depth at a time, far more than was necessary to dispose of contaminants, without performing sampling to determine whether the soil was contaminated." *Id.* ¶ 27. According to Plaintiffs, Defendants "instructed or knowingly permitted" subcontractors to perform excessive excavation, and that Tetra Tech on-site supervisors "monitored the workers and approved the removal of excessive amounts of soil without performing sampling to determine whether the soil was contaminated." *Id.* ¶ 28.

Mason lists several examples of the conduct described above:

> In one instance, workers for Ashbritt and its subcontractors took topsoil from surrounding properties and used it to loosely fill an excavated hole to create the appearance that the land had not been overexcavated. The property owner was forced to pay for the cost to compact and backfill the land.

> In another instance, a property owner working to rebuild his house in Santa Rosa discovered that workers for a subcontractor contracted and supervised by Ashbritt had overexcavated the land, removed pieces of the foundation, and loosely poured soil to cover it up. As a result, the owner was forced to pay $55,000 for remediation.

> In another instance, where 30 truckloads of overexcavated soil were removed from a single individual's land, a supervisor on-site admitted to the property owner that the Army Corps of Engineers had made a mistake by paying the contractors by the ton.

*Mason* SAC ¶¶ 28-30. Mason does not name the property owners who allegedly suffered these harms or provide dates and locations for when and where the conduct occurred.

Plaintiffs allege that ACE paid AshBritt and ECC between $200 and $300 per ton of removed debris. *Mason* SAC ¶ 32; *Horne* SAC ¶ 44. Plaintiffs claim that Defendants over-excavated land, "with no consideration for contamination levels or the need to remove material and debris," in order to increase their profits. *Mason* SAC ¶ 32. According to Plaintiffs, Defendants also routinely removed trees that did not meet the criteria for removal under the ACE contract and left contaminated soil on the properties. *Id.* ¶¶ 32, 36.

On August 22, 2018, the Director of the California Governor's Office of Emergency Services ("OES") sent a letter to ACE, informing them that OES had "discovered 'unacceptable' work performed as part of the cleanup effort, including over-excavation destruction of private property, and false reports of uncontaminated soil." *Mason* SAC ¶ 31. This report issued "[a]fter extensive on-site inspections," and found that ACE's contractors "caused substantial damage to many survivors' properties resulting in revictimization of the affected wildfire survivors." *Id.* The letter speculated that it was "probable this over-excavation was an intentional effort to capitalize on this tragedy by defrauding the government," since the subcontractors were paid by the weight of the soil they removed. *Id.*

## C. Claims and Damages

Plaintiffs assert numerous state law tort claims, including trespass, conversion, trespass to chattels, and violations of the UCL. *Mason* SAC. ¶¶ 71-107. They seek a judgment awarding class benefits for actual, compensatory, and liquidated damages; injunctive relief prohibiting further unlawful conduct; restitution and disgorgement; civil and statutory penalties; interest; and attorneys' fees and costs. *Id.* at 21.

## II. PROCEDURAL HISTORY

Mason asserted a RICO claim in his complaint, and accordingly filed his case in this court under federal question jurisdiction. On January 10, 2020, the court granted AshBritt and Tetra Tech's motions to dismiss Mason's RICO claim. *Mason*, Docket No. 63. *Horne* also asserted a RICO claim, but that case initially was filed in the Superior Court for Napa County. ECC and Tetra Tech removed *Horne* to this court on the basis of federal question jurisdiction. The *Horne* Plaintiffs voluntarily amended their complaint to remove their RICO claims, leaving only state law causes of action.

At the hearing, the court asked the parties whether it could (and should) retain jurisdiction over *Horne*, given that it was removed under federal question jurisdiction but no longer asserts any federal claims. The court also asked whether it could retain jurisdiction over *Mason* if it decided to grant AshBritt and Tetra Tech's motions to dismiss Mason's RICO claims. The court ordered the parties to submit supplemental briefing on the jurisdictional issues, which they did on October 28,

2019.  *Mason*, Docket No. 61; *Horne*, Docket No. 64.  All parties urged the court to retain jurisdiction over this case.  Upon reviewing the parties' submissions and the relevant authorities, the court concludes that it has discretion to retain supplemental jurisdiction over the state law claims in both cases.[4]  Exercise of supplemental jurisdiction is warranted here because, although the related cases are not identical, they raise similar issues of fact and law that are most efficiently resolved in the same court before one judge.

## III.  LEGAL STANDARDS

### A.  Rule 12(f)

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  A matter is "immaterial" when it "has no essential or important relationship to the claim for relief or the defenses being pleaded, while '[i]mpertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question."  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).  The function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that arises from litigating spurious issues by dispensing of those issues before trial, and such a motion may be appropriate where it will streamline the ultimate resolution of the action.  *Fantasy*, 984 F.2d at 1527–28.  "A motion to strike should be granted if it will eliminate serious risks of prejudice to the moving party, delay, or confusion of issues."  *Lee v. Hertz Corp.*, 330 F.R.D. 557, 560 (N.D. Cal. 2019) (citing *Fantasy*, 984 F.2d at 1528).  "Motions to strike are regarded with disfavor [] because of the limited importance of pleadings in federal practice and because they are often used solely to delay proceedings."  *Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d 850, 858 (N.D. Cal. 2014) (quotation omitted).  In most cases, a motion to strike should not be granted unless "the matter to be stricken clearly could have no possible bearing on the subject of the litigation."  *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).  "The grounds for a motion to strike

---

[4] The court also required the parties to submit briefing on whether the court has jurisdiction over either case under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  It appears that CAFA jurisdiction does not apply in *Horne* but might apply to *Mason*.  Because the court retains discretionary supplemental jurisdiction, it is unnecessary to decide whether either case meets the requirements for CAFA jurisdiction.

must appear on the face of the pleading under attack," and "the Court must view the pleading under attack in the light more favorable to the pleader when ruling upon a motion to strike." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 301 F.R.D. 487, 489 (C.D. Cal. 2014) (citations omitted).

### B. Motions to Strike Class Allegations

Rule 23, which governs class actions, provides that a court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). While some courts have recognized the authority to "strike class allegations [under Rule 23 and Rule 12(f)] prior to discovery if the complaint demonstrates that a class action cannot be maintained," *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010), "in general, class allegations are not tested at the pleading stage and are instead scrutinized after a party has filed a motion for class certification." *Yastrab v. Apple Inc.*, No. 14-cv-01974-EJD, 2015 WL 1307163, at *8 (N.D. Cal. Mar. 23, 2015) (denying motion to strike class allegations under Rule 23 as premature). "Courts that have stricken class allegations at the pleading stage . . . have only done so in rare occasions where the class definition is obviously defective in some way." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1221 (N.D. Cal. 2014). As one court noted, "the 'rigorous analysis' contemplated by the Supreme Court's recent class certification rulings requires discovery and development of the record." *Perkins*, 53 F. Supp. 3d at 1221; *see also Roberts v. Wyndham Int'l, Inc.*, Nos. 12-cv-5180-PSG, 12-cv-5083-PSG, 2012 WL 6001459, at *3 (N.D. Cal. Nov. 30, 2012) ("Rule 23(d)(1)(D) motions should be granted only when the complaint has obvious defects that cannot be cured through class discovery and the class certification process." (citation omitted)).

## IV. DISCUSSION

Defendants move to strike Mason and the *Horne* plaintiffs' class allegations because the class definitions are overbroad and contains proposed class members who lack standing; the proposed classes lacks commonality; the named plaintiffs' purported injuries are not typical of the classes; individual issues predominate; and class treatment is not the superior method of resolution.

## A.    Standing

To establish Article III standing, a plaintiff must show:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Defendants argue that Plaintiffs have failed to adequately allege standing for either the class members or named plaintiffs.

### 1.    Class Standing

As defined in the *Mason* SAC, the putative class consists of:

> All owners of real property in Sonoma, Lake, Mendocino, and Napa Counties on whose land Defendants performed cleanup work in relation to 2017 Northern California wildfire damage from October 2017 to the present.

*Mason* SAC ¶ 11.  The *Horne* class is defined identically, except it refers to the "Excavation Defendants," who are the Doe Defendants contracted by ECC.  *Horne* SAC ¶¶ 17, 25.

According to Tetra Tech and ECC, the proposed class necessarily includes individuals who were not injured, since the class is not defined to include only the people who suffered damages because of their conduct.  Tetra Mot. at 21; ECC Mot. at 11-12.  Tetra Tech also lay out the elements of the classes' various tort claims to show why the class definitions are overbroad.  *Id.* at 21-24.  For example, a trespass claim is properly brought by the possessor of real property, not necessarily the owner.  Tetra Mot. at 21-22 (citing *Smith v. Cap Concrete, Inc.*, 133 Cal. App. 3d 769, 774 (1982)). Because the class definition in these cases would include owners who were not in possession of their property during the relevant time period (e.g. landlords), "[a]llowing a class defined in this matter would subject Tetra Tech to claims for liability from class members without standing."  Tetra Mot. at 22.

Whether a class can be defined to include members who potentially lack standing has been a contested topic in the Ninth Circuit.  *See Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 535 (N.D. Cal. 2012) ("The law concerning whether [absent class members] must each satisfy

Article III standing requirements is muddled—even within [the Northern] District."). Some courts have held that class allegations cannot be maintained where the class definition encompasses individuals who would lack standing to bring their own claims. *See, e.g.*, *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (striking class allegations because the class definition "necessarily includes individuals . . . who suffered no damages. Such individuals would lack standing to bring these claims."); *Lyons v. Bank of Am., NA*, No. 11-cv-1232-CW, 2011 WL 6303390, at *7 (N.D. Cal. Dec. 16, 2011) (granting a motion to strike class allegations "[b]ecause the proposed class includes many members who have not been injured, it is not certifiable"); *Tietsworth*, 720 F. Supp. 2d at 1146 (granting Rule 12(f) motion where the class definition included individuals who did not suffer injury). Other courts have held that only the named plaintiffs needs to meet Article III standing requirements, while injuries to other class members are analyzed under Rule 23. *See, e.g.*, *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 532 (C.D. Cal. 2011) ("[T]he majority of authority indicates that it is improper for this Court to analyze unnamed class members' Article III standing where, as here, Defendants do not successfully challenge the putative class representative's standing."); *Waller v. Hewlett-Packard Co.*, 295 F.R.D. 472, 479 (S.D. Cal. 2013) (holding that the named plaintiff must show standing but the rest of the class need only meet the requirements of Rule 23); *Moore v. Apple Inc.*, 309 F.R.D. 532, 542 (N.D. Cal. 2015) ("[A]t least one named plaintiff must satisfy Article III standing requirements for jurisdictional purposes, but whether or not the proposed class includes class members who have not suffered an injury is a Rule 23 question.").

The court in *Waller* details how these inconsistent outcomes stem from several Ninth Circuit cases with seemingly contradictory holdings. 295 F.R.D. at 475-79. In *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974 (9th Cir. 2007), the Ninth Circuit held that standing is satisfied for a class action "if at least one named plaintiff meets the requirements." 511 F.3d at 985. "Thus, we consider only whether at least one named plaintiff satisfies the standing requirements for injunctive relief . . . ." *Id.* *Bates* was reaffirmed in *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011), *abrogation on other grounds recognized by Green v. Federal Exp. Corp.*, 614 Fed. App'x 905, 906 (9th Cir. 2015). *Stearns* stated that "our law keys on the representative party, not all of the class

members, and has done so for many years." 655 F.3d at 1021 (citing *Bates*, 511 F.3d at 985 and

*Casey v. Lewis*, 4 F.3d 1516 (9th Cir. 1993)).  Subsequent to *Bates* and *Stearns*, however, the Ninth

Circuit seemed to reverse course by stating that "no class may be certified that contains members

lacking Article III standing."  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012)

(quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006)).

　　　*Waller* describes the disarray in district court opinions that resulted from these seemingly

conflicting statements:

> In the wake of *Mazza*, many courts have acknowledged and ostensibly
> followed its directive that absent class members must have Article III
> standing. . . . Other courts have seen that *Stearns* and *Mazza* conflict and
> taken no position. . . . And still others have followed *Stearns* without
> acknowledging *Mazza* at all.

*Waller*, 295 F.R.D. at 478 (citing cases).  *Waller* itself ultimately followed *Bates* and *Stearns* in

holding that only the named plaintiff needs to establish standing, and the claims of unnamed class

members are analyzed only under Rule 23.  *Id.* at 479.  The court pointed out that the statement in

*Mazza* "comes in a single sentence that cites Second Circuit authority" without further analysis of

the underlying proposition.  *Id.* at 479; *see Mazza*, 666 F.3d at 595).  *Waller* noted that the lack of

analysis is particularly glaring in light of the Ninth Circuit's earlier contradictory statements in *Bates*

and *Stearns*, which *Mazza* did not even acknowledge despite citing both cases in that same

discussion.  *Waller*, 295 F.R.D. at 479; *see Mazza*, 666 F.3d at 595-96.

　　　Other district courts have similarly declined to follow *Mazza*'s unexplained citation to the

Second Circuit's decision in *Denney*.  *See Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 903 (N.D.

Cal. 2015) ("Many district courts have declined to apply the *Mazza* language and have instead

adhered to the *Stearns* ruling that only one named plaintiff must meet standing requirements.");

*Arnott v. U.S. Citizenship & Immigration Servs.*, 290 F.R.D. 579, 584 (C.D. Cal. 2012) ("This single

line in *Mazza*, unexplained and absent any discussion of prior Ninth Circuit precedent, directly

contradicts *Bates*, which was rendered *en banc.*").

　　　The Ninth Circuit itself later seemed to walk back *Mazza*'s statement by saying that "the

statement taken in context signifies only that it must be possible that class members have suffered

injury, not that they did suffer injury, or that they must prove such injury at the certification phase."

*Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1137 n. 6 (9th Cir. 2016) (citing *Stearns*, 655 F.3d at 1021 and *Bates*, 511 F.3d at 985).  Subsequent district court cases have held that the clarification in *Torres* reaffirms the holding in *Stearns* and *Bates* that only the named plaintiff must establish Article III standing in a class action.  *See Davidson v. Apple, Inc.*, No. 16-cv-04942-LHK, 2018 WL 2325426, at *9 (N.D. Cal. May 8, 2018) ("Significantly, *Torres* cited both *Stearns* and *Bates*, underscoring the cases' continued vitality."); *Mays v. Wal-Mart Stores, Inc.*, 330 F.R.D. 562, 578 (C.D. Cal. 2019) (discussing *Torres* and concluding that only a named plaintiff must satisfy standing requirements).

The conclusion that only named plaintiffs must establish Article III standing also follows logically from consideration of Rule 23's requirements of commonality and typicality:

> Most courts concerned about the standing of absent class members are in fact concerned about whether the class is properly defined, as the issue tends to arise in the context of class certification, not jurisdiction. In this sense, the problem of un-injured absent class members is a problem of Rule 23, not of Article III.

1 Newberg on Class Actions § 2:3 (5th ed.).  In other words, Rule 23 adequately addresses Defendants' concerns over whether they will be exposed to liability by uninjured class members by prohibiting certification of classes that fail to meet certification standards.  *See Moore*, 309 F.R.D. at 542 ("[U]nder *Bates* and *Stearns*, at least one named plaintiff must satisfy Article III standing requirements for jurisdictional purposes, but whether or not the proposed class includes class members who have not suffered an injury is a Rule 23 question.").

In sum, the court holds that only the named plaintiff must meet Article III's standing requirements, and that non-injured class members can be excluded through the normal operation of Rule 23.  Defendants' Rule 23 challenges to the proposed classes are addressed below in conjunction with their motion to strike.

### 2.    Class Representatives' Standing

There is still the question of whether Mason and the *Horne* Plaintiffs have adequately pleaded that they have standing as class representatives.  The court concludes that they have not.  Mason's SAC includes only perfunctory information about the injuries he himself suffered:

> Plaintiff Craig Mason is a resident of the State of California. During the

> class period, Mr. Mason owned real property in Sonoma County on which
> Defendants performed cleanup services relating to the Northern California
> Fires. During the cleanup, Defendants removed excessive amounts of soil,
> structures, vegetation, or other land or materials from Mr. Mason's
> property, resulting in damage to real property, loss of personal property, and
> annoyance and discomfort.

*Mason* SAC ¶ 8. The *Horne* Plaintiffs' descriptions of their injuries are identical, substituting only their own names and counties. *Horne* SAC ¶¶ 9-16. From the broad descriptions offered, it is impossible to tell what damage the class representatives allegedly suffered. The description states that Defendants "removed excessive amounts of soil, structures, vegetation, *or* other land or materials" from each of their properties, but the disjunctive obscures which of these harms occurred to which plaintiffs or whether all the named plaintiffs suffered each listed harm. *Mason* SAC ¶ 8; *Horne* SAC ¶¶ 9-16 (emphasis added). Further, the plaintiffs in both actions allege that Defendants failed to test for contaminated soil yet none of the named plaintiffs allege that they themselves suffered any injuries because of this conduct. They make general allegations that the class was injured due to Defendants' conduct, but it is circular to suggest that the named plaintiffs must have standing because of the class members' injuries. Each named plaintiff must plead that they suffered a "concrete and particularized" injury that is "fairly traceable to the challenged action of the defendant." *Friends of the Earth, Inc*, 528 U.S. 180–81. The named plaintiffs' vague, overbroad, and disjunctive statements as to the harm they suffered does not meet this standard.

Accordingly, the court grants Defendants' motion to strike on the basis that the named plaintiffs have not adequately pleaded that they each have Article III standing. As explained further below, however, the court will grant leave to amend with respect to the standing of the named plaintiffs. To obviate the need for Defendants to file another motion to strike if Plaintiffs' amended complaint adequately alleges standing, the court also reaches the merits of Defendants' arguments regarding the class allegations.

### B.    Class Allegations

"While a court has the authority to grant a motion to strike class claims at the pleading stage, such motions are rarely successful." *Lee*, 330 F.R.D. at 562. Numerous courts within this district have determined that motions to strike class allegations "are disfavored because a motion for class certification is a more appropriate vehicle for arguments about class propriety." *Covillo v.*

*Specialtys Café*, No. 11-cv-00594-DMR, 2011 WL 6748514, at *6 (N.D. Cal. Dec. 22, 2011) (quoting *Hibbs-Rines v. Seagate Tech., LLC*, No. 08-cv-5430-SI, 2009 WL 513496, at *3 (N.D. Cal. Mar. 2, 2009) (quotation omitted)); *see also Astiana v. Ben & Jerry's Homemade, Inc.*, Nos. 10-cv-4387-PJH, 10-cv-4937-PJH, 2011 WL 2111796, at *14 (N.D. Cal. May 26, 2011) (stating that a motion to strike class allegations "appears to allow a determination of the suitability of proceeding as a class action without actually considering a motion for class certification."); *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. 13-cv-1803-EMC, 2014 WL 1048710, at *3 (N.D. Cal. Mar. 14, 2014) (denying motion to strike class allegations on the ground that Rule 12(f) is not the proper vehicle to dismiss class allegations). Courts that have permitted such motions "have held that a motion to strike class claims based only on the pleadings is proper only if the court is 'convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed.'" *Parducci v. Overland Sols., Inc.*, No. 18-cv-07162-WHO, 2019 WL 3220282, at *4 (N.D. Cal. July 17, 2019) (quoting *In re iPad Unlimited Data Plan Litig.*, No. 10-cv-2553-RMW 2012 WL 2428248, at *2 (N.D. Cal. June 26, 2012)).

Despite the overwhelmingly negative view of such motions in this district, Defendants argue that it is appropriate to strike class allegations prior to the completion of discovery "[w]here the complaint demonstrates that a class action cannot be maintained on the facts alleged." Tetra Mot. at 6. Defendants state that the *Horne* and *Mason* complaints contain "inconsistent primary theories of liability" that "necessarily require an individualized factual investigation" to determine which theory fits each class members' claimed damages. *Id.* at 8. The inconsistency at issue is the supposed allegation that Defendants over-excavated some properties and under-excavated others. *Id.*

At the outset, the court notes that the apparent inconsistency does not exist. The SACs allege that Defendants engaged in over-excavation by removing excess soil, including uncontaminated soil. The SACs also allege that Defendants failed to remove contaminated soil. These allegations are both consistent with the theory that Defendants excavated the land indiscriminately and failed to test for contamination, such that they may have taken too much uncontaminated soil from the same properties where they left contaminated soil. It is possible that all the properties at issue

suffered from both problems; thus, the allegations are not logically inconsistent.

Even if the issues in this case would or will require individual examinations that are inappropriate for a class action, it is still necessary to establish whether this analysis should be undertaken in a Rule 12(f) motion rather than at class certification. Many of the cases cited by Defendants are unpublished district court opinions in other Circuits. *See, e.g.*, *In re Katrina Canal Breaches Consol. Litig.*, 2009 WL 1707923, at *6 (E.D. La. June 16, 2009) (granting motion to strike breach of contract and bad faith insurance class claims because "th[e] Court would have to delve into individualized inquiries regarding the nature and extent of a property owner's damage," among other questions of liability); *Flynn v. DIRECTV, LLC*, 2016 WL 4467885, at *6 (D. Conn. Aug. 23, 2016) (striking class allegations of trespass because "the issue of consent cannot be adjudicated on a class-wide basis"); *Bund v. Safeguard Properties, LLC*, 2016 WL 11530734, at *4 (W.D. Wash. Mar. 2, 2016) (granting motion to strike class allegations of trespass and conversion on the basis that "adjudication of each putative class member's claim would reduce the trial on the merits to a series of individualized mini-trials"). The court has read and considered these opinions but does not find them persuasive.

Other cases cited by Defendants are decisions on class certification motions rather than motions to strike. *See, e.g.*, *Kirkman v. N. Carolina R. Co.*, 220 F.R.D. 49 (M.D.N.C. 2004) (denying class certification in a case alleging claims for trespass because "[b]y its nature as a property dispute, this inquiry is necessarily an individual one"); *Mays v. Tennessee Valley Auth.*, 274 F.R.D. 614 (E.D. Tenn. 2011) (declining to certify a class of property owners affected by a coal ash spill); *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 479 (8th Cir. 2016) (reversing a grant of class certification in an environmental contamination lawsuit because "there likely will be a property-by-property assessment" of liability and damages). These cases may illustrate the difficulty of certifying classes such as the ones that Plaintiffs propose here, but they do not suggest that the court should address this issue on a motion to strike. To the extent that Defendants seek a pronouncement that property contamination and trespass cases are inherently unsuitable for class treatment, the court declines to adopt such a sweeping proposition.

As for decisions on motions to strike class allegations in this district, Defendants rely on

*Sanders*. There, the court granted the defendants' motion to strike allegations over the plaintiff's objections that the motion was premature. 672 F. Supp. 2d at 990-91. However, that decision was based at least in part on the argument that the class definition included individuals who did not suffer any injuries and therefore did not have standing to bring their claims. *Id.* at 991. As discussed above, the standing argument as to absent class members in this case is not compelling. In general, the analysis in *Sanders* is perfunctory, and the court declines to adopt it here.

*Tietsworth*, another case cited by Defendants, is also not compelling. 720 F. Supp. 2d at 1146. *Tietsworth* held that the plaintiffs' express warranty claims were "improper for class treatment" because they involved "elements that are individual to each purported class member, such as the provision of notice, and opportunity to cure, and reliance." *Id.* The court noted that the individual determinations required were "a significant concern for class certification," but did not explain why that concern was appropriate to address on a motion to strike. *Id.* at 1148. The court also did not discuss or even mention that the remedy it granted was an extraordinary measure, much less explain why it was warranted in that particular case.

Defendants also cite to *Kamm v. California City Dev. Co.*, 509 F.2d 205 (9th Cir. 1975) for the general proposition that motions to strike class allegations can be granted, but that case is an example of the extraordinary circumstances in which it made sense to do so. The *Kamm* plaintiffs were investors who bought properties in a desert land development. 509 F.2d at 206-07. They alleged that the defendant promotors defrauded them by "failing to disclose fully to them the nature of the property and the risks inherent in the investment plan." *Id.* at 207. The Attorney General and Real Estate Commissioner sued four of the defendants in state court for false and misleading advertisement as well as deceptive sale practices. *Id.* at 208. The settlement agreement in the state court case provided for offers of restitution to certain purchasers, the development of a program to settle disputes brought by other purchasers, and injunctive relief relating to false and misleading representations about the sale of the desert properties. *Id.* Any purchaser who did not accept an offer and execute a release of claims remained free to bring their own separate action. *Id.* In the federal case, the district court dismissed the class action aspects of the lawsuit. *Id.* at 209. The Ninth Circuit affirmed, holding that the district court did not abuse its discretion in striking the class

allegations as insufficient to meet the superiority requirement of Rule 23(b)(3). *Id.* at 210-13. *Kamm* listed many factors that supported the district court's opinion, including that the class action would "largely duplicate and possibly to some extent negate the work on the state level"; significant relief had already been obtained through the state action; and any class member could still bring their own individual case. *Id.* at 212. No further discovery was required because the public record itself "provided a sufficient evidentiary base on which the 'superiority' question might be determined." *Id.* at 210. In this case, by contrast, there is no public record from which the court could decide the superiority question. Defendants have not identified any risk of duplicating prior remedial efforts, nor do they claim that members of the class have already received relief elsewhere. Therefore, while *Kamm* did affirm a district court's order striking and dismissing class allegations, the highly unique circumstances under which it did so highlights the extraordinary nature of the remedy.

Finally, Defendants cite a single line by the Supreme Court in *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982): "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Falcon*, 457 U.S. at 160. The *Falcon* court was considering the propriety of a district court's decision to certify a class and therefore was not looking merely at the pleadings in that case. Nor did it explain under what circumstances it may be appropriate to determine the certification question from the pleadings.

In contrast, the weight of the authority in this district leans against striking class allegations on a Rule 12(f) motion. *See Boddie v. Signature Flight Support Corp.*, No. 19-cv-03044-DMR, 2019 WL 3554383, at *3 (N.D. Cal. Aug. 5, 2019) (citing cases); *Parducci v. Overland Sols., Inc.*, 2019 WL 3220282, at *3 (citing cases); *Ortiz v. Amazon.com LLC*, No. 17-cv-03820-JSW, 2017 WL 11093812, at *2 (N.D. Cal. Oct. 10, 2017) (citing cases); *Roy v. Wells Fargo Bank, N.A.*, No. 14-CV-04661-SC, 2015 WL 1408919, at *1 (N.D. Cal. Mar. 27, 2015) (citing cases). The court *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609 (N.D. Cal. 2007) went so far as to say that the sufficiency of class allegations should be adjudicated at the certification stage even

when the plaintiffs' class allegations "are suspicious and may in fact be improper." *Id.* at 615–16.

Moreover, the purpose of Rule 12(f) is to permit a court to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *see also Whittlestone, Inc. v. Handi-Craft Co*., 618 F.3d 970, 973 (9th Cir. 2010) (holding district court erred in striking damages claim under Rule 12(f) because "none of the five categories covers the allegations in the pleading sought to be stricken by [defendant].").  Defendants do not explain how the class allegations in either complaint satisfy this standard.  *See Ortiz*, 2017 WL 11093812, at *2 (denying Rule 12(f) motion, finding that "the class allegations are not redundant, immaterial, impertinent, or scandalous."); *see also Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1179 (S.D. Cal. 2012) ("[S]o long as class action allegations 'address each of the elements of Rule 23, relate to the subject matter of the litigation, and are not redundant, immaterial, or impertinent,' the court should find that the allegations are sufficient to survive a motion to strike." (quoting *Clark v. State Farm Mut. Auto. Ins. Co.,* 231 F.R.D. 405, 407 (C.D. Cal. 2005))).

In sum, the court the court is not "convinced that under no set of circumstances could the claim or defense succeed" in this case.  *Parducci*, 2019 WL 3220282, at *4 (citation omitted).  Although Defendants' motions are granted because the named plaintiffs have failed to sufficiently allege that they have standing to bring claims on behalf of the class, the court denies the motions insofar as they challenge the adequacy of Plaintiffs' class allegations at the pleadings stage.

## V.    CONCLUSION

For the reasons stated above, Defendants' motions are granted on the basis that the named plaintiffs have failed to sufficiently allege individual standing.  The court grants Plaintiffs leave to amend on this point.  Plaintiffs must file amended complaints in both cases by no later than **March 4, 2020.**  The court will hold a further case management conference in both cases on April 15, 2020. The parties' updated joint case management conference statements are due on April 8, 2020.

**IT IS SO ORDERED.**

Dated: February 17, 2020



_____
Donna M. Ryu
United States Magistrate Judge