Robert S. Arns, State Bar No. 65071
Jonathan E. Davis, State Bar No. 191346
Shounak S. Dharap, State Bar No. 311557
**THE ARNS LAW FIRM**
515 Folsom Street, 3rd Floor
San Francisco, CA 94105
Tel: (415) 495-7800
Fax: (415) 495-7888

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG MASON, Individually and on Behalf of All Other Similarly Situated Persons,<br><br>Plaintiffs,<br><br>vs.<br><br>ASHBRITT, INC.; TETRA TECH, INC.; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 19-cv-01062-DMR<br><br>[Case Assigned to the Hon. Magistrate Donna M. Ryu, Courtroom 4 –3rd Floor, Oakland]<br><br>**FIFTH AMENDED CLASS ACTION COMPLAINT FOR DAMAGES [F.R.C.P. 23]**<br><br>**DEMAND FOR JURY TRIAL** |



Plaintiffs CRAIG MASON, on behalf of himself and all others similarly situated, (collectively "Plaintiffs") bring this action against Defendants ASHBRITT, INC. ("AshBritt") and TETRA TECH, INC. ("Tetra Tech") (collectively "Defendants"), and allege, upon information and belief, except as to their own actions, the investigation of their counsel, and the facts that are a matter of public record, as follows:

1.      As alleged herein, Plaintiffs are property owners and residents of the areas of Northern California affected by the wildfires of October 2017. Plaintiffs suffered harm to real property and misappropriation of personal property by Defendants, AshBritt and Defendant Tetra Tech, who were responsible for testing and removing debris and contaminated soil from areas affected by the fires.

2.      During the course of debris removal, Defendants performed, oversaw, or directed the removal of excessive amounts of soil, structures, vegetation, or other land or materials, all of which were unaffected and uncontaminated by the wildfires. Defendants directed work that caused damage to or destroyed sidewalks, driveways, wells, and septic tanks. Defendants reported to the owners of the affected properties that land had been cleaned and tests showed soils were uncontaminated when, in fact, contaminated soil, debris, and materials remained, requiring further testing and cleanup. The United States government paid between $200 and $300 per ton of debris removed and paid an estimated five times more per property than any fie cleanup in state history.

3.      Plaintiffs seek actual or compensatory damages, restitution, equitable relief, costs and expenses of litigation, including attorneys' fees, and all additional and further relief that may be available and that the Court may deem appropriate and just under all of the circumstances, individually and on behalf of a proposed class defined below ("the Class").

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332.

5.      This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' California UCL and common law claims because the claims originate from a common nucleus of operative facts.

6.      Venue is proper in this Court pursuant to 28 U.S.C. 1391(b)(2) because, inter alia, a substantial portion of the acts and omissions giving rise to Plaintiffs' claims occurred in this judicial district, and under 28 U.S.C. § 1391(c)(2), because Defendants are subject to personal jurisdiction in this state and in this judicial district, such that Defendants are deemed to reside in this state and in this judicial district.

## PARTIES

**Plaintiff**

7.      Plaintiff Craig Mason is a resident of the State of California. During the class period, Mr. Mason owned real property in Sonoma County on which Defendants performed cleanup services relating to the Northern California Fires. During the cleanup, Defendants removed excessive amounts of soil, other land, and materials from Mr. Mason's property, resulting in damage to real property, loss of personal property, and annoyance and discomfort. Mr. Mason spent in excess of $3,000 for materials and the rental of equipment to fill and grade the overexcavated property. Contaminated fire debris was left on Mr. Mason's property after the cleanup, despite the fact that he was informed the contaminated debris had been removed, the remediation of which will require further labor and materials and which decreases the property's value.

**Defendants**

8.      Defendant AshBritt is a Florida corporation with its principal place of business located at 565 E Hillsboro Blvd. in Deerfield Beach, Florida and maintains substantial ongoing business operations in California. AshBritt is in the business of debris removal and disaster-related general contracting. AshBritt contracted with the United States Army Corps of Engineers ("the Army Corps of Engineers") to enter onto private properties affected by the Northern California Wildfires to demolish structures and objects damaged by fire, excavate contaminated soil, clear land, and remove or haul debris.

9.      Defendant Tetra Tech is a California corporation with its principal place of business located at 3475 East Foothill Boulevard in Pasadena, California and maintains substantial ongoing business operations in California. Tetra Tech is in the business of consulting, engineering, program



management, and construction management. Tetra Tech was contracted to monitor, supervise, inspect, and direct the work of AshBritt and its subcontractors working on the subject properties.

10.     The true names and capacities, whether individual, corporate, associate, or otherwise, of other Defendants designated herein as Does 1 through 10, inclusive, are presently unknown to Plaintiffs and thus sued by such fictitious names. On information and belief, each of the Defendants designated herein as "Doe" is legally responsible for the events and actions alleged herein, and proximately caused or contributed to the injuries and damages as hereinafter described. Plaintiffs will seek leave to amend this complaint, in order to show the true names and capacities of such parties, when the same has been ascertained.

## CLASS ACTION ALLEGATIONS

11.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and the following Class:

> All owners of real property in Sonoma, Lake, Mendocino, and Napa Counties on whose land Defendants performed cleanup work in relation to 2017 Northern California wildfire damage from October 2017 to the present. Excluded from this Class are Defendants and the Judge to whom this case is assigned.

Plaintiffs reserve the right to amend this Class definition if discovery or further investigation demonstrates that the Class should be expanded or otherwise modified.

a.     **Ascertainability of the Class.** The specific members of the Class are identifiable through investigation, Defendants' records, and records in the possession of State of California and County of Sonoma government agencies.

12.     **Numerosity of the Class.** The members of the Class are so numerous that joinder of all members would be impracticable. The precise number of members of the Class and their addresses are presently unknown to Plaintiffs but is presumed to be in the thousands. The precise number of persons in the Class and their identities and addresses may be ascertained from investigation, Defendants' records, and records in the possession of State of California and County of Sonoma government agencies. If deemed necessary by the Court, members of the Class may be notified of the pendency of this action by mail, supplemented by published notice.



13.     **Existence of Predominance of Common Questions of Fact and Law.** There are questions of law and fact common to the members of the Class that predominate over any questions affecting only individual members, including:

a.      Whether Defendants established policies and engaged in uniform acts that resulted in over-excavation of Plaintiffs' soil, destruction of Plaintiffs' property, and failure to remove contaminated material from Plaintiffs' land;

b.      Whether Defendants trespassed onto Plaintiffs' real property, thereby causing damage to land;

c.      Whether Defendants interfered with the possessory rights of Plaintiffs' personal property,

d.      Whether Defendants' conduct violated Business and Professions Code §§ 17200, *et seq.*;

e.      Whether Defendants' conduct otherwise violated California law;

f.      Whether Defendants are jointly or severally liable or otherwise legally responsible for violations alleged herein under an agency or other theory; and

g.      Whether, as a result of Defendants' misconduct, Plaintiffs are entitled to damages, restitution, equitable relief or other damages and relief, and, if so, the amount and nature of such relief.

14.     **Typicality.** The named Plaintiffs' claims are typical of the claims of the members of the Class. The named Plaintiffs have no interests antagonistic to those of the Class and are not subject to any unique defenses.

15.     **Adequacy.** The named Plaintiffs will fairly and adequately protect the interests of all members of the Class and have retained attorneys experienced in class action and complex litigation.

16.     **Superiority.** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons:

a.      It is economically impractical for members of the Class to prosecute individual actions;



4

b.    The Class is readily definable;

c.    Prosecution as a class action will eliminate the possibility of repetitious litigation; and

d.    A class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions.

17.    Plaintiffs do not anticipate any difficulty in the management of this litigation.

## FACTUAL ALLEGATIONS

### 2017 North Bay Wildfire and Preparations for Debris Removal

18.    In October 2017, a series of wildfires ignited and spread across Northern California, causing extensive damage throughout Sonoma, Napa, Mendocino, Lake, and other Counties ("the 2017 North Bay Wildfires"). The fires claimed the lives of 43 individuals, injured others, burned over 245,000 acres, and destroyed over 14,700 homes.

19.    On October 10, 2017, the President of the United States declared the 2017 North Bay Wildfires a major disaster and ordered federal aid to supplement recovery efforts in areas affected by the fires. The Federal Emergency Management Agency ("FEMA") was responsible for coordinating these efforts.

20.    Under the auspices of FEMA, the Army Corps of Engineers oversaw and coordinated contractors' clean up and debris removal work as a part of the recovery efforts following the 2017 North Bay Wildfires ("the Cleanup Project").

21.    Around October 2017, the Army Corps of Engineers contracted with Defendant AshBritt to manage the Cleanup Project. AshBritt, a Florida company, entered into California for the purpose of managing the Cleanup Project.

22.    Generally, the terms of the Army Corps of Engineers contract with AshBritt required AshBritt to perform initial site reconnaissance and individual site assessments; monitor air quality and prevent storm water pollution; segregate ash, metals, and concrete for transport to appropriate disposal or recycling facilities; finish surfaces and remove topsoil; remove trees; and test soil for contamination. Specifically, the contract required AshBritt perform the following:



FIFTH AMENDED CLASS ACTION COMPLAINT

Obtain, analyze and evaluate background soil samples to establish cleanup goals for the project, including asbestos testing. Asbestos testing will not be required if the Contractor is assuming that all ash is toxic and disposing of it at the proper landfill location. If this assumption is not made, tests will be required at a rate of one test per 5000 yd$^3$ of ash.

Collect, consolidate, and remove ash and debris for disposal. This material typically requires special handling and disposal as "designated" or "special" waste at a lined landfill.

Remove three to six inches of soil for reuse or disposal pending waste characterization. If soil is clean, a landfill may accept it as daily cover.

- Upon removing all the debris and three to six inches of soil, sample and analyze the remaining soil surface for the same constituents identified as clean-up goals.

- If results are higher than the threshold for clean-up goals (per the DROP), the Contractor will remove another layer of soil (from 1/2, inch to 3 inches) for disposal and conduct re-sampling of the soil. The removal and re-sampling shall be repeated until the remaining soil meets objectives.
- If results are less than the threshold clean-up goals, observe and verify the site preparation for final erosion control and certification.

23.     Also in October 2017, Tetra Tech was contracted to collect and test soil, among other things, on all properties where AshBritt and its debris removal subcontractors performed work.

24.     Over the course of the months following the beginning of the Cleanup Project, Defendants were awarded several additional contracts to continue performing work on the Cleanup Project. Each additional contract included the same terms and requirements described above.

**Excessive Excavation & Removal**

25.     As indicated above, the Army Corps of Engineers contract required the removal of three to six inches of contaminated soil from the surface of Plaintiffs' properties. Defendants were then required to sample and analyze the remaining soil surface for additional contamination. If the contamination levels were higher than the California Human Health Screening Levels set by the



FIFTH AMENDED CLASS ACTION COMPLAINT

Office of Health Hazard Assessment,[1] Defendants were required to remove small layers of soil (one and one-half to three inches at a time) and re-sample until the remaining soil met the safety threshold.

26.      AshBritt and Tetra Tech instructed or knowingly permitted subcontractors to excavate more than six inches, and in many cases, several feet of soil in locations where no soil had been tested for contamination. Plaintiffs allege that Ashbritt and its subcontractors routinely removed excessive amounts of soil, up to six feet in depth at a time, far more than was necessary to dispose of contaminants, without performing sampling to determine whether the soil was contaminated. Tetra Tech supervisors on site, including "Dewey" and "Liz," monitored the workers and ratified the removal of excessive amounts of soil without performing sampling to determine whether the soil was contaminated.

27.      In one instance, workers for Ashbritt and its subcontractors took topsoil from surrounding properties and used it to loosely fill an excavated hole to create the appearance that the land had not been overexavated. The property owner was forced to pay for the cost to compact and backfill the land.

28.      In another instance, a property owner working to rebuild his house in Santa Rosa discovered that Ashbritt and its subcontractors had overexcavated the land, removed pieces of the foundation, and loosely poured topsoil to cover it up. Upon the owner's request, and individual from the office of counsel for the County of Santa Clara inspected the site and determined that it had been overexcavated. The property owner had to pay to compact and backfill the land.

29.      In another instance, where 30 truckloads of overexcavated soil were removed from a single individual's land, the Tetra Tech inspector on site admitted to the property owner that the Army Corps of Engineers had made a mistake by paying the contractors by the ton.

30.      On August 22, 2018, the Director of the California Governor's Office of Emergency Services ("Cal OES") sent a letter to the Army Corps of Engineers (referred to in the letter as "USACE"). The letter informed the Army Corps of Engineers that Cal OES discovered

---

[1] "Soil- and Soil-Gas Screening Numbers (California Human Health Screening Levels or CHHSLs)," available at https://oehha.ca.gov/chhsltable (last visited January 30, 2019).

FIFTH AMENDED CLASS ACTION COMPLAINT

"unacceptable" work performed as a part of the cleanup effort, including over-excavation, destruction of private property, and false reports of uncontaminated soil.

> After extensive on-site inspections, the issues we have discovered thus far include, but are not limited to, obvious over-scraping of properties, severe damage to driveway and sidewalks, and damage to wells and septic tanks. Additionally, more than a dozen sites that were deemed cleared by USACE have recently been discovered to contain contaminated ash and fire debris.
>
> […]
>
> USACE's contractors caused substantial damage to many survivors' properties resulting in revictimization of the affected wildfire survivors. […] it is clear that USACE's lack of oversight allowed its contractors to take far more soil than was necessary on hundreds of lots. Given these subcontractors were paid per ton of soil removed, it is probable this over-excavation was an intentional effort to capitalize on this tragedy by defrauding the government.

31.     The Army Corps of Engineers compensated AshBritt between $200 and $300 per ton for the removal of debris, including excavated soil and cut down trees, and transportation of the debris to a disposal site. Because AshBritt's compensation for excavation was based on the weight of the soil removed, it oversaw and directed the over-excavation of Plaintiffs' land, with no consideration for contamination levels or the need to remove material and debris, in order to increase the weight of loads and, consequently, its profits.

32.     Both AshBritt and Tetra Tech personnel were personally involved in overseeing work performed on each property involved in the Cleanup Project. An AshBritt project manager and a Tetra Tech monitor were present at each location on a daily basis. These personnel instructed subcontractors to over-excavate properties where proper testing had not been conducted. AshBritt and Tetra Tech directed or knowingly permitted subcontractors' over-excavation.

33.     AshBritt and Tetra Tech informed State and Federal agencies that properties had been cleaned and soil samples showed soil was uncontaminated when either no testing for contamination had occurred on the properties or results of testing for contamination were falsified.

34.     The Army Corps of Engineers contract allowed the removal of trees on private property only when the trees prohibited the debris removal crews from performing their work or if the trees posed a threat to the debris removal crews. Plaintiffs allege that Defendants routinely removed trees that did not fit the criteria for removal.

35.     AshBritt also instructed or knowingly permitted subcontractors to remove trees that did not prevent debris removal crews from performing their work and did not pose a threat to debris removal crew safety.

36.     As a result, Plaintiffs were deprived of the uncontaminated soil on their land and incurred and will continue to incur significant costs to backfill trenches left by Defendants' excessive excavation. Similarly, Plaintiffs were deprived of trees and vegetation on their property and incurred and will continue to incur significant loss associated with the unnecessary removal of trees from their properties. In many instances, Plaintiffs were told their properties had been found cleaned and no contaminated soil remained when, in fact, contaminated soil remained on their properties. In some cases, new soil has been backfilled on top of contaminated soil and property owners must re-excavate their land to remove these contaminants.

37.     Ashbritt and Tetra Tech knew that the Army Corps of Engineers was compensating them for excavation based on debris weight, knew that they were only permitted to remove up to six inches of soil without testing for contamination, and knew that they were permitted to remove trees only when they prevented work from completion or posed a threat to the safety of debris removal crews.

38.     Additionally, Defendants have made representations that only contaminated soil and debris had been removed from each property. In reality, a substantial portion of the soil and debris that Defendants removed was composed of untested or uncontaminated soil and trees that did not meet the criteria for disposal.

**Harm to Plaintiffs**

39.     As a direct result of Defendants' excessive excavation, Plaintiffs incurred significant costs to backfill their land. They have incurred and will continue to incur costs relating to backfilling land, repairing damaged sidewalks, repairing damaged driveways, repairing damaged water lines, repairing damaged septic tanks, retesting soil for contamination, removing contaminated soil, and in some cases re-excavating land to remove contaminated soil that remains underneath backfill.

40.     Plaintiffs will spend thousands of dollars for further debris removal and backfill services performed by private contractors where their properties were over-excavated. The cost to

date of backfilling over-excavated land and removing additional debris is approximately $8,500 per property. This does not include costs Plaintiffs have incurred in relation to inspecting or repairing septic tanks, replacing damaged or destroyed sidewalks or driveways, or testing soil for contamination and remediation.

<b>CALIFORNIA STATE LAW CLAIMS</b>

41.     With regard to the following claims for violations of California State law, the true names and capacities of DOES 1 through 100, inclusive, are unknown to Plaintiffs who sue such Defendants by use of such fictitious names. Plaintiffs will amend this complaint to add the true names when they are ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is legally responsible for the occurrences herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by their conduct.

42.     With regard to the following claims for violations of California State law, and on information and belief, at all times herein mentioned, each Defendant was the agent, partner, joint venturer, representative, or employee of the remaining Defendants, and was acting within the course and scope of such agency, partnership, joint venture, or employment. Furthermore, in engaging in the conduct described below, the Defendants were all acting with the express or implied knowledge, consent, authorization, approval, or ratification of their co-Defendants.

<b>FIRST CAUSE OF ACTION</b>

<b>UNLAWFUL AND UNFAIR BUSINESS PRACTICES</b><br><b>(Bus. & Prof. Code §§ 17200, <i>et seq.</i>)</b>

43.     Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

44.     Business & Professions Code §§ 17200 <i>et seq.</i> prohibits acts of "unfair competition," which is defined by Business & Professions Code § 17200 as including "any unlawful, unfair or fraudulent business act or practice." Defendants' conduct, as described above, constitutes unlawful and unfair business acts and practices.

45.     Defendants have violated and continue to violate Business & Professions Code § 17200's prohibition against engaging in "unlawful" business acts or practices by, <i>inter alia</i>:



a.    Committing trespass, as set forth below;

b.    Committing conversion, as set for the below; and

c.    Committing trespass to chattels, as set for the below.

46.    Defendants' conduct does not benefit competition. Indeed, the injury to Plaintiffs as a result of Defendants' conduct is substantial and far greater than any alleged countervailing benefit.

47.    Plaintiffs could not have reasonably avoided the injury each of them suffered.

48.    At all relevant times, Defendants exceeded their right of entry onto Plaintiffs' properties.

49.    Plaintiffs have suffered injury in fact and lost money or property as a result of Defendants' unlawful and unfair business acts and practices through the wrongful taking of excessive soil from Plaintiffs' properties.

50.    By and through its unlawful and unfair business practices and acts described herein, Defendants have obtained valuable property from Plaintiffs and have deprived Plaintiffs of valuable property, all to their detriment.

51.    As a result of Defendants' violations of the Business and Professions Code § 17200, Plaintiffs seek an order of this Court enjoining Defendants' continued violations. Plaintiffs also seek an order for restitution, disgorgement, and all other relief allowed under the UCL, including interest and attorneys' fees pursuant to, *inter alia*, Cal. Code of Civ. Proc. § 1021.5.

**SECOND CAUSE OF ACTION**

**TRESPASS**

52.    Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

53.    Plaintiffs owned the subject properties.

54.    Plaintiffs permitted Defendants to enter onto the subject properties for the purpose of removing debris, ash, and contaminated soil as outlined by Defendants' contract with the Army Corps of Engineers. Defendants were not permitted to excavate uncontaminated or untested soil deeper than six inches or trees that posed no obstacle to access or hazard to worker safety.



55.     Defendants entered onto Plaintiffs' property and intentionally or negligently removed uncontaminated or untested soil deeper than six inches or trees that posed no obstacle to access or hazard to worker safety.

56.     Plaintiffs did not give Defendants permission to enter onto their property to remove uncontaminated or untested soil or trees that posed no obstacle to access or hazard to worker safety and Defendants exceeded their permission to enter the property.

57.     As a direct, proximate, and foreseeable result of Defendants' unauthorized excavation of uncontaminated or untested soil or trees that posed no obstacle to access or hazard to worker safety, Plaintiffs suffered injury to their land and peaceful enjoyment of their property, including the cost to backfill the removed soil.

58.     By the conduct described herein, Defendants have infringed upon Plaintiffs' property rights and caused injury to real property, annoyance, and discomfort. Plaintiffs seek an award of restitution, disgorgement, injunctive relief, and all other relief allowed under California law.

## THIRD CAUSE OF ACTION
## CONVERSION

59.     Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

60.     Plaintiffs owned the soil and trees upon their real property. Once said soil or trees were excavated or severed from the ground, they were transformed into personal property.

61.     Defendants substantially interfered with Plaintiffs' soil or trees by knowingly or intentionally taking possession of them and removing them from Plaintiffs' land.

62.     Plaintiffs permitted Defendants to remove contaminated soil and trees as outlined by Defendants' contract with the Army Corps of Engineers. Defendants were not permitted to excavate uncontaminated or untested soil deeper than six inches or trees that posed no obstacle to access or hazard to worker safety.

63.     Defendants knowingly or intentionally removed uncontaminated or untested soil deeper than six inches or trees that posed no obstacle to access or hazard to worker safety.



64. Plaintiffs did not give Defendants permission to remove uncontaminated or untested soil or trees that posed no obstacle to access or hazard to worker safety.

65. As a result of Defendants' conduct, Plaintiff suffered a wrongful loss of soil or trees from their properties.

66. Defendants' conduct was a substantial factor in causing Plaintiffs' harm.

67. By the conduct described herein, Defendants have interfered with Plaintiffs' possessory rights wrongfully taken Plaintiffs' personal property. Plaintiffs seek an award of restitution, disgorgement, injunctive relief, and all other relief allowed under California law.

**FOURTH CAUSE OF ACTION**

**TRESPASS TO CHATTELS**

68. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

69. Plaintiffs owned the soil and trees upon their real property. Once said soil and trees were excavated or severed from the ground, they were transformed into personal property.

70. Defendants intentionally interfered with Plaintiffs' possession of soil and trees by knowingly or intentionally taking possession of them and removing them from Plaintiffs' land.

71. Plaintiffs permitted Defendants to remove contaminated soil and trees as outlined by Defendants' contract with the Army Corps of Engineers. Defendants were not permitted to excavate uncontaminated or untested soil deeper than six inches or trees that posed no obstacle to access or hazard to worker safety.

72. Defendants knowingly or intentionally removed uncontaminated or untested soil deeper than six inches or trees that posed no obstacle to access or hazard to worker safety.

73. Plaintiff did not give Defendants permission to remove uncontaminated or untested soil or trees that posed no obstacle to access or hazard to worker safety.

74. As a result of Defendants' conduct, Plaintiff suffered a wrongful loss of soil or trees from their properties.

75. Defendants' conduct was a substantial factor in causing Plaintiffs' harm.



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

76.     By the conduct described herein, Defendants have interfered with Plaintiffs' possessory rights wrongfully taken Plaintiffs' personal property. Plaintiffs seek an award of restitution, disgorgement, injunctive relief, and all other relief allowed under California law.



FIFTH AMENDED CLASS ACTION COMPLAINT

1

## PRAYER FOR RELIEF

2        WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

3  A.     An order certifying this case as a class action and appointing Plaintiff Craig Mason as class

4         representatives and their counsel the Arns Law Firm to represent the Class;

5  B.     For actual and compensatory damages according to proof pursuant to the California Civil

6         Code, common law, and all other applicable laws and regulations;

7  C.     For an order enjoining Defendants from continuing to engage in the conduct described

8         herein;

9  D.     For restitution and disgorgement to the extent permitted by applicable law;

10 E.     For civil and statutory penalties available under applicable law;

11 F.     For pre-judgment and post-judgment interest;

12 G.     For an award of attorneys' fees, costs and expenses as authorized by applicable law; and

13 H.     For such other and further relief as this Court may deem just and proper.

14                                  ## JURY DEMAND

15        Plaintiffs demand a trial by jury on all causes of action so triable.

16

17                            _____/s/ Shounak S. Dharap_____
                              ROBERT S. ARNS
18                            JONATHAN E. DAVIS
                              SHOUNAK S. DHARAP
19                            **THE ARNS LAW FIRM**

20

21

22

23

24

25

26

27

28



FIFTH AMENDED CLASS ACTION COMPLAINT