Robert S. Arns, State Bar No. 65071 (rsa@arnslaw.com)
Jonathan E. Davis, State Bar No. 191346 (jed@arnslaw.com)
Shounak S. Dharap, State Bar No. 311557 (ssd@arnslaw.com)
**THE ARNS LAW FIRM**
A Professional Corporation
515 Folsom St., 3rd Floor
San Francisco, CA 94109
Tel: (415) 495-7800
Fax: (415) 495-7888

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG MASON, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ASHBRITT, INC.; TETRA TECH, INC..; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 19-cv-01062-DMR<br><br>**UPDATED JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Courtroom 4 – 3rd Floor<br>**Judge**: Hon. Donna Ryu<br>**Date**: September 16, 2020<br>**Time:** 1:30 p.m. |

Plaintiff Craig Mason, and Defendants Tetra Tech, Inc. ("Tetra Tech") and Ashbritt, Inc. ("Ashbritt") hereby submit this Joint Case Management Statement. The primary updates to this Joint Case Management Statement pertain to motion practice and discovery contained in Sections 4 and 8, below.

1. **Jurisdiction and Service**

There are no disputes regarding personal jurisdiction or venue in this matter. After briefing on the matter, this Court retained jurisdiction of this case by order dated February 17, 2020. ECF No. 65. Defendants believe that there is no subject matter jurisdiction because Defendants are entitled to derivative sovereign immunity from suit.

Defendants have been served.

2. **Factual Background of Action**

**Plaintiff's Position:** Plaintiff bring a putative class action under Fed. R. Civ. Proc. Rule 23 on behalf of all owners of real property in Sonoma, Lake, Mendocino, and Napa Counties on whose land Defendants performed cleanup work in relation to wildfire damage from October 2017 to the present. Plaintiff contends that Defendants improperly removed excessive amounts of uncontaminated soil, structures, vegetation, or other land or materials.

Plaintiff alleges that Ashbritt was contracted by the U.S. Army Corps of Engineers ("USACE") to manage contractors' recovery efforts following the North Bay Fires. Specifically, Plaintiff alleges that Ashbritt was responsible for performing initial site reconnaissance and individual site assessments; monitoring air quality and preventing storm water pollution; segregating ash, metals, and concrete for transport to appropriate disposal for recycling facilities; finishing surfaces and removing topsoil; removing trees; and testing soil for contamination. Plaintiff alleges that Ashbritt contracted Tetra Tech to collect and test soil and to monitor and direct portions of the work.

Plaintiff alleges that during the course of Defendants' debris removal, Defendants improperly removed excessive amounts of soil, structures, vegetation, or other land or materials,

all of which were unaffected and uncontaminated by the wildfires. Plaintiff also alleges that Defendants left contaminated soil and debris on Plaintiff's and putative class members' properties. As a result, Plaintiff alleges he and the class he seeks to represent incurred and will continue to incur significant costs to backfill their land and remedy costs associated with the unnecessary removal of trees from their properties.

**Ashbritt's Position:** Defendant AshBritt is a rapid-response disaster recovery and special environmental services contractor and was one of three entities awarded contracts by the USACE for managing disaster generated debris following the California wildfires of 2017. All three contractors entered into subcontracts with Tetra Tech for various services. AshBritt entered into a subcontract with Tetra Tech to provide certain services including quality control, monitoring, environmental testing and management of all personnel providing environmental services, monitoring and quality assurance/quality control. AshBritt denies all allegations of wrongdoing alleged by Plaintiff and that this action can be maintained as a class action. AshBritt specifically denies that it improperly removed excessive amounts of soil, structures, vegetation, or other land or materials on the property of Plaintiff and/or the putative class Plaintiff seeks to represent, and denies that it deliberately over-excavated properties in order to increase profit, either individually or as part of some scheme with Tetra Tech as alleged by Plaintiff.

AshBritt maintains that it entered into a contract with the USACE, and at all times performed its work in accordance with the terms of that contract and USACE directives.

Based on the allegations of the current operative complaint, principal factual issues in dispute include, but are not limited to, why the amount of excavation and/or debris removal took place at the property of Plaintiff (and each putative class member he seeks to represent); what was amount of debris removal/excavation that was appropriate at the property of Plaintiff (and each putative class member he seeks to represent)—was it consistent with the USACE task order(s) and/or within the scope of the Right of Entry Plaintiff executed; what testing was done, when and why at Plaintiff's property (and at the property of each putative class member he seeks

to represent); was there any improper over-excavation (or under-excavation) at the property of Plaintiff (and each putative class member he seeks to represent) as alleged by Plaintiff and if so, what was the cause or reason of that over-excavation (or under-excavation) at the property of Plaintiff and each putative class member he seeks to represent (e.g., was it based on a reasonable belief the excavation was needed, an inadvertent error by the particular subcontractor working on the property); was any contaminated soil or other debris left on Plaintiff's property and if so, why; was Plaintiff and/or the property owners he seeks to represent harmed as a result of the alleged over-excavation/debris removal (or under-excavation/debris removal) and if so what was that harm; and what alleged damages, if any, were caused by debris removal operations versus the underlying fire at Plaintiff's property or caused by work done by another person or entity after Defendants' work on Plaintiff's property was completed (and each putative class member's property he seeks to represent).

**Tetra Tech's Position:** Defendant Tetra Tech is a business involved in providing consulting and engineering services. Defendant Tetra Tech denies Plaintiff's allegations in their entirety. Tetra Tech maintains that at all times it performed its work in accordance with the terms of the prime contract and subcontract with AshBritt and USACE directives. The principal factual issues in dispute include but are not limited to: whether Defendant Tetra Tech was following the terms of the master contract and directives of the USACE; whether Tetra Tech was responsible for removal of debris, soil or property; whether Defendant Tetra Tech removed excessive amounts of soil, structures, land, etc.; whether Defendant Tetra Tech monitored, supervised, inspected or directed the work of AshBritt or other subcontractor defendants; Tetra Tech's role related to the testing of soil for Plaintiff's property; the testing that was actually performed on Plaintiff's property; whether Plaintiff (or the putative class) sustained damage to property, and other factual issues relating to class certification.

57468072.v1

**3.     Legal Issues**

Plaintiff alleges that Defendants' actions constituted unlawful and unfair business practices in violation of California Business and Professions Code §§ 17200, *et seq*. (the Unfair Competition Law or "UCL"). Plaintiff also alleges that Defendants' actions constituted trespass, conversion, and trespass to chattels.

In addition to the disputed legal issues identified in the preceding paragraph and those affirmative defenses listed in Defendants' answers, Defendants anticipate at least the following legal issues:

1. Whether the derivative sovereign immunity doctrine bars Plaintiff's action;
2. Whether the doctrine of consent or waiver bar Plaintiff's recovery;
3. Whether Defendants are liable under California's Unfair Competition Law;
4. Whether Defendants are liable for the various property torts alleged by Plaintiff; and
5. Whether the putative class can be certified under Rule 23(b)(3).

**4.     Motions**

**Prior Motions:**

1. Defendants' Motions to Dismiss Plaintiff's Second Amended Complaint, ECF Nos. 41 and 42, were granted with leave to amend, ECF No. 63. Plaintiff did not amend his complaint to re-allege the RICO claims.

2. Defendants' Motions to Strike Class Allegations, ECF Nos. 39 and 43, were granted in part, with leave to amend. ECF No. 65. On April 3, 2020, Plaintiff filed his Fifth Amended Complaint, which excluded the prior RICO and fraud based claims and provided a more specific allegation as to the alleged harm supposedly caused by Defendants at Plaintiff's property. ECF No. 73. No new plaintiffs were added to the Fifth Amended Complaint. Defendants answered that Fifth Amended Complaint on April 17, 2020. ECF Nos. 76, 77.

**Pending Motions:**

There are no pending motions.

**Anticipated Motions:**

1. Pursuant to the agreement of the parties and this Court's May 20, 2020 Civil Conference Minute Order ("Minute Order") (ECF No. 80), Defendants will be filing a motion to dismiss pursuant to Rule 12(b)(1) on the issue of derivative sovereign immunity, which Defendants believe precludes any liability in this case and results in this Court lacking subject matter jurisdiction of this action. *See Yearsley v. W.A. Ross Construction*, 309 U.S. 18 (1940); *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988); *Myers v. United States*, 323 F.2d 580 (9th Cir. 1963); *Perkins v. United States*, 1:07cv1185 LG-RHW, 2009 U.S. Dist. LEXIS 75688 (S.D. Miss. Aug. 21, 2009). Plaintiff's position is that the doctrine of derivative sovereign immunity is inapplicable here because, as alleged in the operative complaint, Defendants exceeded the scope of their authority when they removed excessive soil and trees, and failed to properly test and remove contaminated soil, ash, and debris, from putative class members' properties. *See Yearsley*, 309 U.S. at 21.

2. In the event Defendants' motion to dismiss on the issue of derivative sovereign immunity is not successful, Defendants may later file motions for summary judgment on certain causes of action asserted by Plaintiff and/or affirmative defenses.

3. Plaintiff intends to move to certify his proposed class. Plaintiff agrees to meet and confer with Defendants regarding a schedule for class certification following the Court's decision on Defendants' 12(b)(1) motion.

**5. Amendment of Pleadings**

On April 3, 2020, Plaintiff filed his Fifth Amended Complaint. ECF No. 73. Defendants answered that Fifth Amended Complaint on April 17, 2020. ECF Nos. 76, 77. The deadline to further amend the pleadings has passed.

57468072.v1

**6. Evidence Preservation**

The parties are aware of and have taken steps to comply with their evidence preservation obligations under the Federal Rules of Civil Procedure and the Northern District of California's ESI Guidelines.

**7. Disclosures**

The Parties have made their initial disclosures pursuant to Rule 26(a).

**8. Discovery**

Pursuant to the Court's scheduling order dated February 27, 2019, the Parties held their Rule 26(f) conference on May 21, 2019.

A. <u>Discovery Taken to Date</u>

On June 24, 2019, Plaintiff served on Defendants Interrogatories and six sets of Requests for Production of Documents. Defendants timely served their responses and objections to this discovery on July 29, 2019. Pursuant to this Court's Minute Order, on June 10, 2020, the parties participated in an informal exchange of documents related to Defendants' entitlement to derivative sovereign immunity. Both Plaintiff and Defendants (jointly) served limited requests for production of documents and interrogatories in late June. The parties responded to that discovery on August 13, 2020, which included the production of additional documents. Defendants have requested and Plaintiff agreed to provide clarification of certain discovery responses and have propounded additional written discovery relating to derivative sovereign immunity. Further, consistent with the Court's local rules, Defendants have engaged Plaintiff's counsel to schedule Plaintiff's deposition and a site inspection of Plaintiff's property.

B. <u>Scope of Anticipated Discovery</u>

**Plaintiff's Position:** Plaintiff believes that some classwide discovery will be necessary to adjudicate derivative immunity, as the question of whether Defendants exceeded the scope of their contractual authority may be answered through uniform, classwide policies regarding Defendants' performance of work during the cleanup project. Pursuant to the stipulation and order

regarding deadlines for Defendants' derivative sovereign immunity motion, Plaintiff will evaluate necessary discovery once Defendants' motion has been filed. At this stage, Plaintiff expects to seek 30(b)(6) depositions and depositions of Defendants' employees who were present on the subject job site. Plaintiff also expects to subpoena depositions of CalOES employees.

**Defendants' Anticipated Discovery**: On August 17, 2020, Defendants requested dates from Plaintiff's counsel to schedule Plaintiff's deposition and an inspection of Plaintiff's property. Plaintiff has now provided information regarding Plaintiff's availability for his deposition and Defendants will work with Plaintiff's counsel to accommodate Plaintiff's availability and schedule his deposition and property site inspection for times mutually convenient to the parties later this month, if possible. On August 21, 2020, Defendants served second sets of interrogatories, which are due on September 20, 2020. Subject to Defendants' receipt of the clarifying information from Plaintiff, Defendants anticipate seeking discovery from the contractor(s) or third party(ies) that allegedly performed work on Plaintiff's property.

<u>Limitations or Modifications of Discovery Rules</u>

Plaintiff anticipates the need to increase the number of permitted depositions up from ten (10) to fifteen (15) and the number of permitted interrogatories, although a specific number has not yet been determined.

Defendants do not anticipate the need to modify discovery rules.

C. <u>ESI Protocol and Stipulated Protective Order:</u>

The parties have agreed to adopt the stipulated Protective Order based upon the Northern District of California Model Order. The parties have also agreed in principle to adopt the Northern District of California's model stipulated order regarding ESI but need to further meet and confer to discuss the specific parameters and terms of the proposed order after the scope of the claims properly asserted in this action are further refined and resolved by the Court.

D. <u>Rule 26(f) Discovery Plan</u>

57468072.v1

This subsection discusses the schedule for discovery as required under Rule 26(f)(B). All other reportable views and proposals under Rule 26(f) are discussed throughout Section 8(A)-(E) of this Case Management Statement in accordance with the Standing Order for all Judges of the Northern District of California – Contents of Joint Case Management Statement.

The Parties conducted their Rule 26(f) conference on May 21, 2019. On July 24, 2020, this Court adopted the following joint discovery plan related to Defendants' assertion that Plaintiff's claims are barred because Defendants are entitled to derivative sovereign immunity by virtue of their work for the USACE.

| Deadline | Action |
| --- | --- |
| **September 23, 2020** | The Parties respond to written discovery already propounded and Plaintiff responds to additional discovery propounded by Defendants (including, but not limited to deposition notices of Plaintiff and other persons/entities with information regarding Plaintiff's property and site inspection). |
| **October 19, 2020** | Defendants file their Derivative Sovereign Immunity Motions. |
| **November 3, 2020** | Plaintiff to identify and the Parties to meet and confer regarding any additional discovery Plaintiff contends is needed to oppose Defendants' motions |
| **January 8, 2021** | All discovery by Plaintiff completed. |
| **January 27, 2021** | Plaintiff's Opposition to Defendants' Motions due. |
| **February 19, 2021** | Defendants' Reply Memoranda due. |
| **March 4, 2021** | Hearing on Defendants' Motions. |

E. Anticipated Discovery Disputes

**Plaintiff's Position**: As discussed above, the Court has ordered, and Plaintiff agrees, to limit discovery to the issue of derivative sovereign immunity. To that end, Plaintiff believes that some classwide discovery will be necessary to adjudicate derivative immunity, as the question of

9

UPDATED JOINT CASE MANAGEMENT CONFERENCE STATEMENT

57468072.v1

whether Defendants exceeded the scope of their contractual authority may be answered through uniform, classwide policies or communications regarding the performance of work during the cleanup project.

Pursuant to the stipulation and order regarding deadlines for Defendants' derivative sovereign immunity motion, Plaintiff will evaluate necessary discovery once Defendants' motion has been filed.

**Defendants' Position:** Under the Court's Minute Order, discovery is expressly limited to the issue of derivative sovereign immunity. Defendants have engaged and will continue to engage in good faith meet and confer discussions regarding the appropriate scope of discovery in light of this Court's Minute Order and the parties' prior stipulation, reserving their right to object to discovery from Plaintiff that is beyond the scope of that issue. Defendants do not believe broad class discovery is appropriate in this case, particularly in light of the privacy rights and potential and actual conflicts that arise in Plaintiff seeking information about third party proper owners who are represented by other counsel in litigation relating to property damage arising out of the 2017 wildfires.

Defendants note that counsel for Plaintiff appear to also represent upwards of 40 individuals whose properties were damages and/or destroyed by the North Bay Fires in lawsuits against PG&E. Plaintiff's counsel also recently suggested that between 10 and 50 clients have suggested they may have complaints with regard to USACE-authorized cleanup, some of whom might be willing to join one of these related actions as named plaintiffs (although the deadline to amend has passed), and others who apparently wish to remain anonymous to protect their privacy. The parties have started discussions to address the possibility of informally exchanging information with regard to these other unidentified property owners.

//

//

**9.     Class Actions:**

**<u>Plaintiff's Position:</u>**

Plaintiff seeks certification of a California State class. The class sought to be represented is defined as follows:

> All owners of real property in Sonoma, Lake, Mendocino, and Napa Counties on whose land [contractors overseen, directed, or monitored by Ashbritt and Tetra Tech] performed cleanup work in relation to wildfire damages from October 2017 to the present.

Plaintiff will seek certification under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The Plaintiff contends that he is entitled to maintain the action as a class action under Rule 23(a) and (b) based upon the facts set forth in Section 2, *supra*, and in addition because common questions of law and fact predominate, including (but not limited to):

a. Whether Defendants trespassed onto Plaintiff's real property, thereby causing damages to the land;
b. Whether Defendants interfered with the possessory rights of Plaintiff's personal property;
c. Whether Defendants' conduct violated Business and Professions Code §§ 17200, *et seq*.;
d. Whether Defendants' conduct otherwise violated California law;
e. Whether Defendants are jointly or severally liable or otherwise legally responsible for violations alleged herein under an agency or other theory; and
f. Whether, as a result of Defendants' misconduct, Plaintiff's are entitled to damages, restitution, equitable relief, or other damages and relief, and, if so, the amount and nature of such relief.

Plaintiff's position is that a class action is superior to all other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically impractical for members of the Class to prosecute individual actions, the Class is readily definable, prosecution as a class action will eliminate the possibility of repetitious litigation, and a class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions. Plaintiff will meet and confer with Defendants regarding a schedule for class certification following the Court's decision on Defendants' derivative sovereign immunity motion.

UPDATED JOINT CASE MANAGEMENT CONFERENCE STATEMENT

57468072.v1

**Defendants' Position:**

Defendants do not believe that this case is appropriate for class action treatment, and assert that their entitlement to derivative sovereign immunity mandate that this action be dismissed. Resolution of this derivative sovereign immunity issue is the current focus of this action per the Court's Minute Order.

Further, Defendants maintain that a review of the operative Fifth Amended Complaint discloses that Plaintiff cannot establish the requisite elements for class certification. For instance, Defendants note that a class action is not superior to other available methods for the fair and efficient adjudication of the controversy and joinder of all members of the Class is not impracticable—the pending PG&E coordinated litigation in San Francisco Superior Court (JCCP No. 4955), in which Plaintiff and their counsel have filed complaints, demonstrates how a class action is not a superior method and that joinder is not impracticable. Moreover, the fact that Plaintiff's counsel have filed what appears to be approximately 40 individual complaints in the PG&E action on behalf of individual property owners but have not done so here, demonstrates that Plaintiff's proposed class of all property owners who had work done by Defendants is manifestly overbroad and that the class is not ascertainable, that Plaintiff's claims are not typical and they are not adequate representatives, that individual issues will predominate over the allegedly common issues (which Defendants dispute) and that management of this action on a class-wide basis is not practical.

If necessary, Defendants will meet and confer with Plaintiff on class related issues in this litigation after the Court rules on the Defendants' motion to dismiss based on derivative sovereign immunity.

**10. Related Cases**

This case has been ordered related to *Horne v. Environmental Chemical Corporation, dba ECC Remediation Service, et al*, Case No. 18-07181-DMR, pending before this Court.

UPDATED JOINT CASE MANAGEMENT CONFERENCE STATEMENT

57468072.v1

## 11. Relief

**Plaintiff's Position:** Plaintiff seeks actual and compensatory damages, treble damages, restitution and disgorgement, civil and statutory penalties, attorneys' fees and costs, and prejudgment and post-judgment interest. Plaintiff contends that damages will be calculated based on the value of soil and trees removed from putative class members' properties, the cost to remediate Defendants' alleged over-excavation of the land, and the depreciation in value of putative class members' properties as a result of Defendants' alleged actions.

**Ashbritt's Position:** AshBritt denies any liability, and believes that this case should be resolved via motion to dismiss on the basis of Defendants' derivative sovereign immunity. However, to the extent liability is established, fact witness and expert testimony will be required to assess what damages are attributable to the alleged over-excavation at Plaintiff's property (and separately as to any other property) versus that which was necessarily undertaken as part of the remediation to which Plaintiff consented, and/or that was within the scope of the Right To Entry Plaintiff authorized or under the USACE task order(s), and whether the work and/or testing Plaintiff had done on his property after Defendants' work ceased may be the cause of Plaintiff's alleged damages. AshBritt further contends that fact and expert testimony will be required to segregate damage that is properly allocated to PG&E as a result of its responsibility for the underlying cause of the property damage, e.g., the wildfires.

**Tetra Tech's Position:** Defendant Tetra Tech denies liability to Plaintiff, and believes that this case should be resolved via motion to dismiss on the basis of derivative sovereign immunity. However, if any such liability exists, Plaintiff's damages should be limited to a reasonable and actual recoverable monetary amount upon submission of proper evidentiary proof specific to Plaintiff's property.

## 12. Settlement and ADR

Plaintiff believes that reputable news coverage and publicized communications from the California Office of Emergency Services corroborate Plaintiff's allegations, and, along with

57468072.v1

information obtained during Plaintiff's counsel's investigation, are sufficient to position the Parties to negotiate a global resolution. The working relationship between Plaintiff's and Defendants' counsel in the ongoing process of narrowing the scope of formal and informal discovery leads Plaintiff to further believe that the Parties will be able to negotiate an early resolution.

Defendants currently believe that the parties' differences regarding the fundamental legal and factual issues in this case, particularly as to the applicability of derivative sovereign immunity and the viability of Plaintiff's class claims, and Plaintiff's insistence on broad discovery regarding every property for which Defendants or any of their subcontractors performed worked, including confidential, proprietary and protected third party information, make ADR impractical at this juncture. Defendants are, however, willing to discuss with Plaintiff and the Court the advisability of ADR at the September 16, 2020 Case Management Conference.

**13.    Consent to Magistrate Judge For All Purposes**

All Parties have consented to have this matter determined by a Magistrate Judge for all purposes.

**14.    Other References**

Plaintiff does not believe that this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation at this time.

**15.    Narrowing of Issues**

The Parties have agreed to narrow the case to first address Defendants' assertion of derivative sovereign immunity, which has included a mutual exchange of information and documents, followed by a phased approach to permit appropriate discovery and briefing before proceeding onto any class or merits-based discovery.

Plaintiff has agreed to work with Defendant on limiting discovery at this stage but notes that he believes the issue of derivative sovereign immunity is inextricably tied to the theory of liability in this case and, as discussed above, will require some degree of classwide discovery.

57468072.v1

**16.    Expedited Schedule**

At this time, the parties do not believe that a discussion of expedited scheduling procedures is necessary.

**17.    Scheduling**

On July 24, 2020, this Court adopted the following joint discovery plan related to Defendants' assertion of the jurisdictional defense of derivative sovereign immunity.

| Deadline | Action |
|---|---|
| September 23, 2020 | The Parties respond to written discovery already propounded and Plaintiff responds to additional discovery propounded by Defendants (including, but not limited to deposition notices of Plaintiff and other persons/entities with information regarding Plaintiff's property and site inspection). |
| October 19, 2020 | Defendants file their Derivative Sovereign Immunity Motions. |
| November 3, 2020 | Plaintiff to identify and the Parties to meet and confer regarding any additional discovery Plaintiff contends is needed to oppose Defendants' motions |
| January 8, 2021 | All discovery by Plaintiff completed. |
| January 27, 2021 | Plaintiff's Opposition to Defendants' Motions due. |
| February 19, 2021 | Defendants' Reply Memoranda due. |
| March 4, 2021 | Hearing on Defendants' Motions. |

Defendants anticipate that they will be able to undertake their derivative sovereign immunity discovery by or before the current agreed upon September 23, 2020 deadline. However, Defendants may need to make certain individualized requests for discovery outside of that cut-off depending on the availability of witnesses and counsel, and the adequacy of certain discovery responses by Plaintiff and third parties. The parties intend to work together to agree upon mutually acceptable dates for such discovery, if necessary.

57468072.v1

**18.    Trial**

**Plaintiff's Position:**  The case will be tried to a jury and Plaintiff believes the trial would last two weeks.  Plaintiff will propose a trial date following adjudication of the issue of derivative sovereign immunity.

**Defendants' Position:**  No determination regarding the length of trial can be made until the issues of derivative sovereign immunity, and, if necessary, class certification, are resolved.

**19.    Disclosure of Non-party Interested Entities or Persons**

The parties have filed the Certification of Interested Entities or Persons required by Civil Local Rule 3-15.

**20.    Professional Conduct**

Counsel for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21.    Other Matters**

Given that community circulation of the novel coronavirus (SARS-CoV-2) may continue through the end of this year and beyond, Plaintiff intends to meet and confer with Defendants regarding stipulated procedures for remote depositions in this matter.

57468072.v1

| | |
|---|---|
| Dated: September 9, 2020 | THE ARNS LAW FIRM |

By   /s/ _____
    Robert S. Arns
    Jonathan E. Davis
    Shounak S. Dharap

    Attorneys for Plaintiff

Dated: September 9, 2020                NOSSAMAN LLP

By   /s/ _____
    James H. Vorhis
    Jill N. Jaffe

    Attorneys for Defendant
    TETRA TECH, INC.

Dated: September 9, 2020                ROGERS JOSEPH O'DONNELL

By   /s/ _____
    Gayle M. Athanacio

    Attorneys for Defendant
    ASHBRITT, INC.